ENGLISH v BLUE CROSS BLUE SHIELD OF MICHIGAN

Docket No. 243941. Submitted March 2, 2004, at Grand Rapids. Decided August 26, 2004, at 9:00 A.M. Leave to appeal sought.

John R. English, D.D.S., filed a request with the Commissioner of the Office of Financial and Insurance Services, seeking an external review of a decision of Blue Cross Blue Shield of Michigan denying coverage for certain blood tests received by English. The commissioner, pursuant to the Patient's Right to Independent Review Act (PRIRA), MCL 550.1901 *et seq.*, accepted the request and assigned it to an independent review organization (IRO). After considering materials submitted by English and Blue Cross, the IRO issued a recommendation stating that certain of the tests were medically necessary. The commissioner, consistent with the IRO's recommendation, found that certain tests were medically necessary tests under the terms of the health insurance contract, ordered a partial reversal of the denial of coverage by Blue Cross, and directed Blue Cross to pay the costs of those tests. Blue Cross appealed to the Kent Circuit Court. The commissioner was allowed to intervene in the matter. The circuit court, George S. Buth, J., affirmed the commissioner's order, finding that the order was not arbitrary or capricious and that the due process rights of Blue Cross had not been violated in the proceedings. Blue Cross appealed by leave granted.

The Court of Appeals *held*:

1. PRIRA provides a health carrier an opportunity to be heard. The factors that are weighed in determining whether this opportunity satisfies due process requirements are (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. A weighing of these factors in this matter indicates that the opportunity of Blue Cross to be heard satisfied due process requirements.

2. The due process rights of Blue Cross were not violated by virtue of the fact that it did not know the identity of and could not challenge the recommendation of the IRO before the commissioner rendered a final decision.

3. The standards provided in PRIRA for the review of a health carrier's adverse determination are sufficiently precise. The act confers discretion on the commissioner without permitting the commissioner to exercise authority arbitrarily. The act limits the commissioner to reaching conclusions that comply with the terms of the health care plan at issue, and the act prevents the commissioner from engaging in making health care policy or reaching an unreasoned decision. PRIRA represents a valid legislative delegation of authority to an administrator.

4. The act permits the commissioner to order the health carrier to immediately approve coverage but does not permit the commissioner to order the health carrier to pay for the services at issue. The part of the order directing Blue Cross to pay for the tests must be reversed and the matter must be remanded for entry of an order compelling that coverage be approved.

5. The commissioner's determination that English was entitled to coverage for certain of the tests at issue because the tests fit within the language of the insurance contract was not arbitrary or capricious.

Affirmed in part, reversed in part, and remanded.

1. CONSTITUTIONAL LAW — DUE PROCESS — INSURANCE — PATIENT'S RIGHT TO INDEPENDENT REVIEW ACT.

The procedures and standards provided in the Patient's Right to Independent Review Act for the external review of a health carrier's adverse determination of an insured's claim do not violate the health carrier's due process rights and are a valid legislative delegation of authority to the Commissioner of the Office of Financial and Insurance Services (MCL 550.1901 *et seq.*).

2. INSURANCE — PATIENT'S RIGHT TO INDEPENDENT REVIEW ACT.

The Patient's Right to Independent Review Act provides that a health carrier that receives notice that the Commissioner of the Office of Financial and Insurance Services has reversed an adverse determination of the health carrier regarding an insured's coverage must immediately approve the coverage that was the subject of the adverse determination; the commissioner may order the health carrier to immediately approve coverage, but may not order the health carrier to pay for the services at issue (MCL 550.1911[17]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *William A. Chenoweth*, Assistant Attorney General, for the Commissioner of the Office of Financial and Insurance Services.

*Joseph W. Murray* and *Robert A. Phillips (John P. Jacobs, P.C.,* by *John P. Jacobs,* of counsel) for Blue Cross Blue Shield of Michigan.

Before: METER, P.J., and WILDER and BORRELLO, JJ.

WILDER, J. Respondent, Blue Cross Blue Shield of Michigan, appeals by leave granted the trial court's order that affirmed the order of the Commissioner of the Office of Financial and Insurance Services. The commissioner's order, entered pursuant to the Patient's Right to Independent Review Act (PRIRA), MCL 550.1901 *et seq.*, directed respondent to pay for certain laboratory services. We affirm in part, reverse in part, and remand for action consistent with this opinion.

I

Petitioner, John R. English, is a dentist receiving health care coverage through the Michigan Dental Association's (MDA) insurance plan, titled Comprehensive Health Care Copayment Certificate Series CMM 250 (the contract). In April 2000, petitioner sought treatment with his arthritis specialist, who in the course of his treatment of petitioner ordered that certain blood tests be performed by Quest Diagnostics (Quest). At the same time the blood tests ordered by his arthritis specialist were performed, and with the approval of his general physician, petitioner requested and also received blood tests for Prostate Specific Antigen (PSA), HIV, and Hepatitis. Respondent approved the PSA test but withheld a coverage determination for the

remaining blood tests, asserting that the testing company, Quest, had not supplied respondent with sufficient information. After the submission of additional information by Quest, respondent denied coverage on the bases that petitioner's "coverage does not include benefits for routine/screening procedures," and that "[o]nly services necessary to diagnose disease, illness or injury are covered. Because these laboratory tests were billed with a screening diagnosis, they were appropriately denied and you remain liable for those charges."

In February 2001, petitioner filed with the commissioner a request for external review of respondent's decision to deny coverage, as permitted by PRIRA. The commissioner accepted the request and assigned the external review request to the Center for Health Dispute Resolution, an independent review organization (IRO). The IRO assigned review of the matter to a team consisting of one of its physician consultants, a practicing physician who is board-certified in infectious diseases, and a licensed on-staff attorney. The commissioner advised respondent and petitioner of the referral. On first being advised of the referral to the IRO, respondent notified the commissioner that it "had decided not to raise any contractual issues at this time," and reserved the right "to submit documentation supporting both medical and contractual issues" to the IRO.

Respondent submitted materials to the IRO for consideration in its review. The materials consisted of a four-page letter explaining the reasons for respondent's denial of coverage, the cover page and page 57 of the certificate in force at the time the claim was submitted, the cover page and page 3.29 of the Professional-Service Coverage Codes Manual, and the cover page and pages 2e.4 and 2e.28 of the Guide for Physicians and Medical Assistants, Volume 1. In its written submission, respon-

dent asserted that its submission was concerning "the [e]xternal [r]eview of the above-mentioned Blue Cross Blue Shield of Michigan (BCBSM) member" and that

> [w]e did not pay for the HIV and Hepatitis laboratory tests provided to Dr. English because these services were not required or directly related to the diagnosis or treatment of an illness or injury. The laboratory tests were not required to diagnose an illness or a medical condition for which Dr. English has shown symptoms. Thus, the claim was appropriately denied and payment is not merited. . . . The laboratory tests provided to Dr. English were billed with a screening diagnosis. Thus, under the express terms of his health care coverage, the laboratory tests are excluded as a contract benefit.

Thereafter, the IRO issued its recommendation that the HIV-1, Hepatitis B surface antigen (HB s AG), Hepatitis B surface antibody (HB s AB), and Hepatitis B Core AB (HB Core AB) tests were medically necessary, while the Hepatitis E antigen (HB E AG) and Hepatitis E antibody tests were not medically necessary tests for petitioner. The IRO concluded that the HIV-1 test was medically necessary because there are no signs or symptoms of HIV infection, and therefore the HIV-1 test is the only means of diagnosis. Similarly, the IRO noted that chronic Hepatitis B frequently exists without symptoms and is only diagnosed through testing; thus, the IRO concluded that the Hepatitis B tests were medically necessary to assist petitioner, a health care provider, in taking precautions to protect his patients. The commissioner, consistent with the IRO's recommendation, found that the HIV-1 and Hepatitis B tests were medically necessary tests under the terms of the contract, ordered a partial reversal of respondent's denial of coverage, and directed that respondent pay the costs of petitioner's HIV-1 and Hepatitis B tests.

Respondent filed with the commissioner a request for reconsideration and a stay of the commissioner's order, and simultaneously appealed the commissioner's decision to the circuit court.[1] In its request for reconsideration and a stay, respondent asserted for the first time that it serves only as the administrator of petitioner's health care plan and that BCS Insurance, and not respondent, is the entity with financial responsibility for petitioner's claim. The commissioner considered respondent's argument that it was not the financially responsible entity to be untimely raised and cited this and other factors in denying respondent's request for reconsideration and a stay.

In its claim of appeal to the circuit court, respondent asserted that the commissioner's order was arbitrary, capricious, and clearly erroneous on the bases that (1) BCS Insurance rather than respondent held financial responsibility for petitioner's claim, and (2) petitioner's contract did not provide coverage for the tests at issue. Respondent also contended that in ordering that respondent pay for the tests, the commissioner exceeded the commissioner's authority under the common law and violated respondent's due process rights under the state and federal constitutions. On stipulation of the parties, the circuit court permitted the commissioner to intervene in this matter.[2]

The circuit court affirmed the commissioner's order, ruling that the order was not arbitrary or capricious and that respondent's constitutional rights had not been violated in the proceedings. This Court granted leave to appeal the order of the circuit court.

---

[1] The circuit court appeal was held in abeyance pending a ruling on the request for reconsideration and a stay.

[2] Petitioner did not participate in the circuit court proceedings in this matter and has not participated in this appeal.

II

We review the final decision of an administrative officer, in cases where a hearing is not required, to determine whether the decision was authorized by law. *Northwestern Nat'l Cas Co v Comm'r of Ins*, 231 Mich App 483, 487-488; 586 NW2d 563 (1998). "[A]n agency's decision that 'is in violation of statute [or constitution], in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious,' is a decision that is *not* authorized by law." *Id.* at 488, quoting *Brandon School Dist v Michigan Ed Special Services Ass'n*, 191 Mich App 257, 263; 477 NW2d 138 (1991) (emphasis in original).

We review the constitutionality of a statute de novo. *DeRose v DeRose*, 469 Mich 320, 326; 666 NW2d 636 (2003), citing *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001). "Statutes are presumed constitutional unless the unconstitutionality is clearly apparent." *DeRose, supra* at 326, citing *McDougall v Schanz*, 461 Mich 15, 24; 597 NW2d 148 (1999). If a case can be resolved on nonconstitutional grounds, we will not decide the constitutional issues presented. *Pythagorean, Inc v Grand Rapids Twp*, 253 Mich App 525, 527; 656 NW2d 212 (2002), citing *Widdoes v Detroit Pub Schools*, 242 Mich App 403, 408 n 4; 619 NW2d 12 (2000).

III

A

Enacted in 2000, PRIRA provides covered persons with the opportunity to seek external review of a health carrier's adverse determination, such as a decision to

terminate or deny coverage for a health care service.[3] MCL 550.1907, 550.1911. The act dictates that within sixty days of receiving notice of an adverse determination, a covered person or the person's authorized representative may file a request for external review with the commissioner. MCL 550.1911(1). Within five business days of receiving such a request, the commissioner must conduct a preliminary review of the request to determine whether the requesting individual is a covered person; whether the service denied reasonably appears to be covered under the covered person's health care plan; whether the covered person has exhausted applicable internal grievance procedures; whether the covered person has provided the commissioner complete information and forms; and whether the dispute appears to concern issues of medical necessity. MCL 550.1911(2).

When the commissioner accepts a request for external review, the commissioner must inform the covered person that the person may, within seven business days of receiving notice, submit additional information and documents for consideration by the reviewing entity. MCL 550.1911(4)(a). Additionally, the commissioner must immediately provide the health carrier with written notice of acceptance of the request for external review. MCL 550.1911(4)(b). Within seven business days of receiving notice of the commissioner's acceptance of the request for external review, the health carrier or its designee must provide the reviewing entity "the documents and any information considered in making the adverse determination . . . ." MCL 550.1911(9). If the covered person provides the commis-

---

[3] The act defines the terms "covered person," "health carrier," "adverse determination," and several other terms used in the act in MCL 550.1903.

sioner with additional information, the commissioner must provide the health carrier with the information it received from the covered person. MCL 550.1911(11).

If the request appears to involve questions of medical necessity, the commissioner must assign the request to an approved IRO, which, within fourteen days of assignment of the request, must provide the commissioner a written recommendation advising the commissioner to uphold or reverse the health carrier's adverse determination.[4] MCL 550.1911(6), (14). The IRO must review all the information and documents provided by the health carrier and the covered person that it receives from the commissioner. MCL 550.1911(11). Additionally, to the extent available and considered appropriate, the IRO must consider the covered person's medical records, the health care professional's recommendation, other documents submitted by the health carrier or covered person, the coverage terms of the health care plan, medical practice guidelines, and clinical review criteria developed by the health carrier. MCL 550.1911(13). Immediately upon receiving the recommendation, the commissioner must review it to ensure that it complies with the coverage terms of the covered person's health care plan. MCL 550.1911(15). Within seven business days of receiving the IRO's recommendation, the commissioner must notify the covered person and the health carrier of the commissioner's decision to uphold or reverse the health carrier's adverse determination. MCL 550.1911(16). In the notice, the commissioner must

---

[4] If the request does not involve questions of medical necessity, the commissioner has the option of conducting the external review or assigning the request to an IRO. MCL 550.1911(7). If the commissioner keeps the request, the commissioner must comply with the requirements imposed on IROs and notify the covered person and health carrier of the commissioner's decision within fourteen days of deciding to keep the request. MCL 550.1911(7), (16).

state the primary reason or reasons for the commissioner's decision and provide "the information provided as determined by the reviewing entity . . . ." MCL 550.1911(16)(a).

Upon receipt of the commissioner's decision reversing the adverse determination, the health carrier must immediately approve the coverage that was the subject of the adverse determination. MCL 550.1911(17). "A person aggrieved by an external review decision . . . may seek judicial review no later than 60 days from the date of the decision in the circuit court for the county where the covered person resides or in the circuit court of Ingham county." MCL 550.1915(1).

B

Respondent first asserts that because this Court will generally decline to address constitutional issues when we can resolve an appeal on a nonconstitutional basis, *Pythagorean, Inc, supra,* we should interpret PRIRA as having incorporated the contested case procedures outlined in the Administrative Procedures Act (APA), MCL 24.301. We decline to do so. This Court applies clear and unambiguous statutes as written. *People v Phillips,* 469 Mich 390, 395; 666 NW2d 657 (2003). While respondent boldly contends that the APA "plainly affords . . . the full measure of procedural due process, along with useful standards of appellate review," that would "truly cure [respondent's] procedural and substantive due process problems," it provides no analysis of the language of the statute at issue in support of this claimed interpretation. "Insufficiently briefed issues are deemed abandoned on appeal." *Etefia v Credit Technologies, Inc,* 245 Mich App 466, 471; 628 NW2d 577 (2001). Moreover, respondent did not specifically assert in its statement of questions presented that PRIRA should be read as incor-

porating the APA contested case procedures. An issue not contained in the statement of questions presented is waived on appeal. *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000).

C

Turning to respondent's constitutional claims, respondent first argues that the procedures dictated by PRIRA violate respondent's due process rights.[5] Specifically, respondent contends its due process rights were violated because it has not received "any real hearing." We disagree.

> "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."

> \* \* \*

> "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " [*In re Brock*, 442 Mich 101, 110-111; 499 NW2d 752 (1993), quoting *Mathews v Eldridge*, 424 US 319, 332, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976).]

The "fundamental requirement of due process" is the "opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews, supra* at 333, quoting *Armstrong v Manzo*, 380 US 545, 552; 85 S Ct 1187; 14 L Ed 2d 62 (1965). Because the Michigan Constitution does not provide greater protection than the federal due process guarantee, federal precedent appropriately con-

---

[5] Although respondent argues that the act "as interpreted and applied is unconstitutional," respondent does not contend that the commissioner proceeded in a manner other than that expressly required by the statute. Accordingly, we will consider respondent's argument as a challenge to the facial validity of PRIRA.

tributes to our analysis. *American States Ins Co v Dep't of Treasury*, 220 Mich App 586, 589 n 1; 560 NW2d 644 (1996), citing *Saxon v Dep't of Social Services,* 191 Mich App 689, 698; 479 NW2d 361 (1991).

Respondent asserts that the process provided by PRIRA is insufficient because respondent did not have the opportunity to cross-examine or call witnesses, or submit documentary evidence during an evidentiary hearing. However, contrary to respondent's contention, an oral hearing is not necessary to provide a meaningful opportunity to be heard.[6] The "opportunity for a party to present arguments and evidence in support of its position before a decision is rendered," *Westland Convalescent Ctr v Blue Cross & Blue Shield of Michigan*, 414 Mich 247, 268; 324 NW2d 851 (1982), does not always require a trial-like proceeding:

> The fact that there is a constitutional requirement for a hearing does not mean that a full trial-like proceeding is mandated. Indeed, the United States Supreme Court has emphasized the flexible nature of due process in administrative proceedings when the governing statute does not explicitly provide for a full hearing. Only when the property interest involved was the potential deprivation of the financial means by which to live has the Court insisted on

---

[6] *American Community Mut Ins Co v Comm'r of Ins,* 195 Mich App 351; 491 NW2d 597 (1992), on which respondent relies, does not support respondent's argument. In that case, an insurer challenged the commissioner's use of summary proceedings to decide whether the insurer's proposed insurance form complied with the law. The insurer asserted that a specific statute, MCL 24.272(3), required an evidentiary hearing. *American Community Mut Ins, supra* at 362. *American Community Mut Ins* does not stand for the proposition that an oral evidentiary hearing is required in every instance to meet due process requirements. Similarly, *Hanson v Michigan State Bd of Registration in Medicine,* 253 Mich 601, 606-607; 236 NW 225 (1931), does not, despite respondent's assertions, stand for the proposition that due process always requires an opportunity to call and confront witnesses. The Court in that case addressed what process is due in proceedings to revoke a medical license. *Id.* at 603.

an evidentiary hearing prior to the termination of benefits. See *Goldberg v Kelly*, 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970).

... "Due process can be interpreted to require a hearing to the extent and only to the extent that a party will have a chance to know and to respond to the evidence against him, without requiring a hearing 'on the record' ". [*Westland Convalescent Ctr, supra* at 270-271 (citations omitted).]

Moreover, as noted by the United States Supreme Court, the "judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances." *Mathews, supra* at 348.

PRIRA requires the health carrier to submit to the IRO the "documents and any information considered" in reaching the health carrier's decision. MCL 550.1911(9). Moreover, the commissioner, in the commissioner's notice to respondent of the commissioner's receipt of petitioner's request for external review, asked respondent to supply any documentation or information in its possession that would assist the commissioner in making a preliminary determination. Accordingly, PRIRA provides the health carrier with an opportunity to be heard.

To determine whether this opportunity satisfies due process requirements, we balance the following factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [*Brock, supra* at 111, quoting *Mathews, supra* at 335.]

Here, the private interest affected by the commissioner's decision is pecuniary in nature—the cost of the health care services in dispute. In the instant matter, the blood tests under dispute cost approximately $187.

Second, the risk of erroneous deprivation incurred by employing only a "paper hearing" under these circumstances appears relatively small. After the health carrier and the covered person provide the documentation requested, the commissioner possesses all the information necessary to determine whether to affirm or reverse the adverse determination. Additionally, the commissioner's evaluation of the adverse determination does not generally turn on questions of credibility, even to the extent that the IRO considers whether the disputed service is medically necessary; thus, oral testimony is not crucial. See *Mathews, supra* at 344 (stating that although medical professionals may disagree with one another's medical conclusions, the " 'specter of questionable credibility and veracity is not present' " [citation omitted]). In light of the fact that the health carrier has already reviewed the covered person's claim and receives from the commissioner any information the covered person supplies to the commissioner, the health carrier is aware of, and can respond to, any evidence presented by the covered person. Notably, the act does not prohibit the health carrier from making additional submissions to the commissioner after receiving the information the covered person has submitted, although the time for doing so is somewhat limited by the time frames prescribed in the act.

Third, the governmental interest evident in PRIRA is providing covered persons with prompt independent external reviews of decisions by health carriers. The language of the act reflects the government's focus on avoiding a protracted decision-making process. The act

sets short time limits for each stage of the external review process, in probable recognition of the fact that decisions regarding medical services often must be made with some urgency in order to best protect the health of the covered person.[7] With this in mind, we believe that coordinating and conducting a full trial-like proceeding could substantially frustrate the purposes of the act and burden the commissioner financially and administratively. We also note that although the external review decision constitutes the final administrative remedy under PRIRA, the act "does not preclude a health carrier from seeking other remedies available under applicable state law." MCL 550.1915(2). Weighing these factors, we conclude that respondent's opportunity to be heard satisfied due process requirements.

In a related argument, respondent asserts that its due process rights were violated because it did not know the identity of and could not challenge the recommendation issued by the IRO before the commissioner rendered the commissioner's decision. Respondent asserts that permitting the commissioner to consider a report to which respondent has not had an opportunity to respond constitutes impermissible "secret decision-making." We disagree. The cases upon which respondent relies are readily distinguishable. For example, in *Interstate Commerce Comm v Louisville & N R Co*, 227 US 88; 33 S Ct 185; 57 L Ed 431 (1913), the United States Supreme Court stated that where a statute provided a right to a "full hearing," including introduction of testimony, the decision must be made on the facts adduced at the hearing, rather than information

---

[7] Although not currently under our review, MCL 550.1913 details procedures for an expedited external review, which, in specified circumstances, provides for a shorter time between receipt of the request for review and the commissioner's decision.

learned by the fact-finder from an outside source. *Id.* at 91-93. The Court stated that the commission's decision was not entitled to a presumption of factual support merely because the commission had the authority to obtain information to perform its duties. *Id.* at 93. Rather, its decision must be based on, and be supported by, evidence produced by the parties. *Id.* Similarly, in *Pavilion Apartments, Inc v State Tax Comm*, 373 Mich 601; 130 NW2d 399 (1964), our Supreme Court condemned the State Tax Commission's refusal to permit a taxpayer to review evidence used to arrive at an assessed value for his property until after appellate review of the taxpayer's challenge to the assessment. *Id.* at 602-603. Relying on *Interstate Commerce Comm, supra,* the Court held that refusal to disclose this evidence deprived the taxpayer of a fair hearing. *Id.* at 608.

Unlike the unknown information in these cases, the IRO's recommendation does not constitute evidence. The recommendation merely assists the commissioner in reaching a decision and serves as a tool to alleviate the administrative burden the act places on the commissioner. Moreover, the recommendation is not binding on the commissioner.[8] In fact, on receipt of the recommendation, the commissioner must independently review the recommendation to confirm that it does not contradict the terms of the health plan. MCL 550.1911(15).

To the extent respondent contests its inability to challenge the IRO's credentials, respondent ignores the

---

[8] In this respect, PRIRA is distinguishable from the section of the worker's compensation act condemned in *Dation v Ford Motor Co,* 314 Mich 152, 157-158; 22 NW2d 252 (1946), which stated that the majority decision of a three-physician panel regarding the existence of a medical condition was final and conclusive. PRIRA is also distinguishable in that the parties in *Dation* did not have any opportunity to present evidence to the medical commission. Respondent's reliance on *Dation* is, therefore, misplaced.

fact that the IRO and its clinical peer reviewers must meet certain standards, described in MCL 550.1919, before the commissioner can assign external reviews to the IRO. Additionally, PRIRA prohibits the commissioner from assigning an external review to an IRO with a conflict of interest with parties involved in the dispute, including the covered person, the health care provider or facility, and the health carrier. MCL 550.1919(4). Accordingly, although the specific IRO assigned to respondent's case is not known to respondent until after the commissioner makes a decision, the act provides assurances that the IRO is qualified and disinterested.

D

Respondent also asserts that PRIRA is constitutionally infirm because it does not (1) provide the commissioner or the IRO with standards for reviewing the adverse determination, (2) limit the commissioner's discretion, or (3) announce a standard of review for the circuit court to apply to the commissioner's decision. Although respondent characterizes its argument as an assertion that the act violates substantive due process, its argument is more accurately characterized as one attacking the Legislature's delegation of power to an administrative agency and rooted in the separation of powers doctrine. "When a legislative body chooses to vest an administrative body with the power to regulate public conduct, the legislative body must provide adequate standards to protect the public from the exercise of uncontrolled, arbitrary power." *Natural Aggregates Corp v Brighton Twp*, 213 Mich App 287, 303; 539 NW2d 761 (1995).

We disagree with respondent's assertion that PRIRA does not provide the commissioner with any standards for determining whether to uphold or reverse the ad-

verse determination. Specifically, the act provides factors for the commissioner to consider in deciding whether to initially accept or reject the request for external review, MCL 550.1911(2), and prohibits the commissioner from deciding matters of medical necessity without the benefit of a recommendation from an IRO, MCL 550.1911(7). The act also limits the commissioner's discretion by requiring the commissioner to select an IRO from those approved under the act. MCL 550.1911(6). Additionally, after receiving the IRO's recommendation, the commissioner must evaluate the recommendation to ensure that it complies with the health plan's terms of coverage. MCL 550.1911(15). The act also requires the commissioner to state any reasons why the commissioner chose not to follow the IRO's recommendation, if applicable. MCL 550.1911(16)(b). Furthermore, the act details the evidence the IRO must consider in completing the external review, MCL 550.1911(13), and requires the IRO to provide reasons for its recommendation, including references to the evidence it considered in reaching its recommendation. MCL 550.1911(14)(e), (g).

We determine whether the standards provided in the act are adequate by adhering to the following guidelines:

> "First, the act in question must be read as a whole; the provision in question must be construed with reference to the entire act. Next, the standard should be as reasonably precise as the subject matter requires or permits. Third, if possible, the statute must be construed as being valid, that is, it must be construed as conferring administrative, not legislative, power and as giving discretionary, not arbitrary, authority. Last, the statute must satisfy due process requirements." [*Natural Aggregates Corp, supra* at 303-304, quoting *Attorney General v Public Service Comm*, 161 Mich App 506, 510; 411 NW2d 469 (1987).]

Considering these factors, we conclude that the standards supplied in the act adequately protect the public from arbitrary decision-making. As we concluded above, the act satisfies due process requirements. We also conclude that the standards provided are sufficiently precise. Although respondent challenges the IRO's permission to determine to what extent it is "appropriate" to review certain documents, merely permitting the decision maker to determine what is appropriate does not render a standard unconstitutionally imprecise. See *Kopietz v Clarkston Zoning Bd of Appeals*, 211 Mich App 666, 671-672; 535 NW2d 910 (1995). "[I]t would be impractical to attempt to formulate a rule that describes the weight to be given to each fact in all circumstances." *Id.* at 672, citing *Village of Holly v Gromak*, 81 Mich App 241, 247; 265 NW2d 107 (1978). The act confers discretion on the commissioner without permitting the commissioner to exercise authority arbitrarily.

Additionally, despite respondent's assertions, PRIRA is not analogous to the former MCL 550.1205(5), which was invalidated in *Blue Cross & Blue Shield of Michigan v Governor*, 422 Mich 1; 367 NW2d 1 (1985), because it lacked adequate standards. The legislation at issue in that case directed the commissioner to "approve" or "disapprove" actuarial risk factors without providing the commissioner a basis on which to make a decision.[9] *Id.* at 52-53. The statute did not indicate whether the commissioner was to decide whether the

---

[9] The statute condemned by the Supreme Court, MCL 550.1205(5) provided:

"Within 30 days after receipt of the risk factors ... , the commissioner shall do 1 of the following:

"(a) Approve the factors and proceed under subsection (7).

risk factors were actuarially sound or whether the commissioner could reject the risk factors merely because the commissioner liked a different set of factors. *Id.* at 53-54. Unlike that statute, however, PRIRA specifies that the IRO is not bound by the health carrier's decisions or conclusions reached during its utilization review or internal grievance processes, indicating that the IRO is deciding the issue anew. MCL 550.1911(8). Moreover, because the act limits the commissioner to reaching conclusions that comply with the terms of the health care plan, the act prevents the commissioner from engaging in making health care policy or reaching an unreasoned decision, contrary to respondent's claims.

We also reject respondent's contention that the act lacks requisite standards because it does not announce the standard for judicial review of the decision. MCL 550.1915 provides that the commissioner's decision constitutes the "final administrative remed[y] available under this act." The standard of review, although not stated in the act, is provided by Const 1963, art 6, § 28, which guides review of "[a]ll final decisions . . . of any administrative officer or agency . . . which are judicial or quasi-judicial and affect private rights or licenses . . . ." For these reasons, we conclude that the act represents a valid delegation of authority.

Respondent also asserts that PRIRA is "void for vagueness" and, therefore, invalid. We disagree. As this Court recently stated in *STC, Inc v Dep't of Treasury*, 257 Mich App 528, 539; 669 NW2d 594 (2003):

"(b) Define 1 or more additional lines of business, transmit the definitions to the health care corporation, and request that the corporation establish risk factors for those additional lines. . . .

"(c) Disapprove the factors, and proceed under subsection (6)." [*Blue Cross & Blue Shield of Michigan, supra* at 52 n 40.]

> A statute may be declared void for vagueness if (1) it is overbroad and infringes First Amendment freedoms, (2) it does not provide fair notice of the conduct it regulates, or (3) it gives the trier of fact unstructured and unlimited discretion in concluding whether the statute has been violated.

A statute provides fair notice if it gives "a person of ordinary intelligence a reasonable opportunity to know what is prohibited or required." *Id.* When determining whether a statute inappropriately delegates unstructured and unlimited discretion to a decision maker, the court examines whether the statute " 'provide[s] standards for enforcing and administering the laws in order to ensure that enforcement is not arbitrary or discriminatory . . . .' " *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 468; 639 NW2d 332 (2001), quoting *In re Forfeiture of 719 N Main*, 175 Mich App 107, 112-113; 437 NW2d 332 (1989). Although respondent's argument in this regard is unclear, respondent does not appear to challenge PRIRA on the basis that it does not provide notice of proscribed conduct. To the extent that respondent claims the statute is unconstitutionally vague because it lacks sufficient standards, we reiterate that the act provides adequate standards for the commissioner and the IRO to use in making decisions.

E

Respondent also argues that the circuit court and the commissioner erred by concluding that respondent is financially responsible to pay for the blood tests. We agree for reasons not articulated by respondent on appeal.

MCL 550.1911(17) provides that upon receiving notice that the commissioner has reversed an adverse determination, "the health carrier immediately shall

approve the coverage that was the subject of the adverse determination or final adverse determination." The term "health carrier" is broadly defined to include such entities that "contract[] or offer[] to contract to provide, deliver, arrange for, pay for, or reimburse any of the costs of health care services . . . ," MCL 550.1903(s), and we conclude that respondent is a health carrier within the meaning of the act. The act, however, does not specify that the commissioner may order the health carrier to pay for the services at issue. Under the plain language of the act, the commissioner's order could do no more than require that respondent immediately approve coverage for the HIV and Hepatitis B blood tests. Accordingly, we conclude that the specific order of the commissioner directing respondent to pay for the tests was not authorized by law, and we reverse that part of the order and remand for entry of an order compelling instead that coverage be approved. See MCR 7.216(A)(7) (stating that this Court may "enter any . . . order . . . as the case may require").

F

Finally, respondent contends that the commissioner's order was erroneous because the services in question were not covered under petitioner's health care plan and the IRO improperly considered whether the services were medically necessary. We disagree.

As previously noted, the date of service at issue was April 2000. The record establishes that in April 2000, the contract between petitioner and respondent provided that "[l]aboratory and pathology exams are payable when necessary to diagnose a disease, illness, pregnancy or injury." Respondent argues that the disputed tests constitute "screening" procedures not covered by the contract, and, in support thereof, relies on

the alleged exclusion of "screening" procedures from coverage in documents titled Professional-Service Coverage Codes Manual and Guide for Physicians and Medical Assistants. From the face of these two documents, it appears that these documents were provided by respondent to medical professionals and not to petitioner. Nothing in the record establishes otherwise. Thus, there is no record evidence that these documents are part of the contract between petitioner and respondent.

Like other contracts, an insurance policy is an agreement between the parties. *Zurich-American Ins Co v Amerisure Ins Co*, 215 Mich App 526, 530-531; 547 NW2d 52 (1996), citing *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). "When presented with a dispute, a court must determine what the parties' agreement is and enforce it." *Fragner v American Community Mut Ins Co*, 199 Mich App 537, 542-543; 502 NW2d 350 (1993). "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins Co v Kneeland*, 464 Mich 491, 496; 628 NW2d 491 (2001). We give contractual language its plain and ordinary meaning, avoiding technical and constrained constructions. *Bianchi v Automobile Club of Michigan*, 437 Mich 65, 71 n 1; 467 NW2d 17 (1991); *Royce v Citizens Ins Co*, 219 Mich App 537, 542; 557 NW2d 144 (1996). "Exclusions limit the scope of coverage provided and are to be read with the insuring agreement and independently of every other exclusion." *State Farm Mut Automobile Ins Co v Roe (On Rehearing)*, 226 Mich App 258, 263; 573 NW2d 628 (1997), citing *Hawkeye-Security Ins Co v Vector Constr Co*, 185 Mich App 369, 384; 460 NW2d 329 (1990). This Court must enforce clear and specific exclusions and will construe them strictly in favor of the

insured. *McKusick v Travelers Indemnity Co*, 246 Mich App 329, 333; 632 NW2d 525 (2001). "If an insurer intends to exclude coverage under certain circumstances, it should clearly state those circumstances in the section of its policy entitled 'Exclusions.' " *Fragner, supra* at 540, citing *Transamerica Ins Corp of America v Buckley*, 169 Mich App 540, 546; 426 NW2d 696 (1988).

Because the language excluding screening procedures from coverage was not part of the contract, the commissioner was required to determine coverage solely on the basis of whether the blood tests at issue were "necessary to diagnose a disease, illness, pregnancy or injury." Given these parameters, the commissioner's conclusion, that petitioner was entitled to coverage for the tests at issue because the tests were within the language of the contract, was not arbitrary or capricious. A decision is arbitrary if it is "[w]ithout adequate determining principle[,] . . . [f]ixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, . . . decisive but unreasoned." *Romulus v Dep't of Environmental Quality*, 260 Mich App 54, 63; 678 NW2d 444 (2003) (citations and internal quotations omitted). A decision is "capricious" if it is "apt to change suddenly; freakish; whimsical; humorsome." *Id.* at 64.

Certain relevant contractual terms are not defined in the portion of the contract made a part of the record by respondent, and, therefore, we apply the ordinary meanings of these terms and may refer to a dictionary to learn their meaning. *Morinelli v Provident Life & Accident Ins Co*, 242 Mich App 255, 262; 617 NW2d 777 (2000). "Necessary" is defined in *Random House Webster's College Dictionary* (1995) as "essential, indispens-

able, or requisite." A "disease" is defined as "a disordered or abnormal condition of an organ or other part of an organism resulting from the effect of genetic or developmental errors, infection, nutritional deficiency, toxicity, or unfavorable environmental factors; illness; sickness." The commissioner found that HIV and Hepatitis B do not exhibit symptoms, and this finding was not disputed below by respondent. Accordingly, the commissioner's conclusion that the disputed blood tests were essential in order to identify the presence of these diseases is reasoned and not subject to sudden change.[10]

Affirmed in part, reversed in part, and remanded for modification of the commissioner's order to require respondent to approve coverage consistent with the commissioner's decision. We do not retain jurisdiction.

METER, P.J., concurred.

BORRELLO, J., I concur in the result only.

---

[10] On appeal to the circuit court, respondent attached as an exhibit a rider that explicitly excludes coverage for "[t]ests and procedures performed for routine or screening/preventative reasons." This rider was not submitted to the commissioner in response to the referral to the IRO. Because the rider was not a part of the record upon which the commissioner was required to make the commissioner's decision, it cannot serve as the basis on which to claim error on appeal. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Nevertheless, we note that the rider appears to reflect an amendment of the contract as of November 2000, approximately seven months after the date of service at issue in the present case. The fact that the language of the rider specifically excludes screening tests from coverage while the language of the contract does not contain this specific exclusion further supports the commissioner's conclusion that the tests were medically necessary within the meaning of the certificate. *Fragner, supra* at 540.