*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW GERHARDT,

      Petitioner-Appellant,

v

MICHIGAN STATE UNIVERSITY, PLAN
SPONSOR and BLUE CROSS BLUE SHIELD OF
MICHIGAN, PLAN ADMINISTRATOR,

      Respondents-Appellees.

UNPUBLISHED
August 24, 2023

No. 363825
Ingham Circuit Court
LC No. 21-000672-AA

Before: GADOLA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

In this case involving a dispute over health insurance benefits, petitioner, Matthew Gerhardt, had requested 24-hour skilled nursing care from his health insurance provider, Blue Cross Blue Shield of Michigan, but the request was denied. Gerhardt appealed to the Director of the Office of Financial and Insurance Services. The director, acting under the Patient's Right to Independent Review Act (PRIRA), MCL 550.1901 *et seq.*, assigned an independent review organization (IRO) to analyze the medical issues presented in Gerhardt's appeal. Following a review of Gerhardt's medical records, the IRO determined that 24-hour skilled nursing care was not required in Gerhardt's case and recommended that the denial of benefits be upheld. The director entered an order adopting that recommendation. Gerhardt appealed to the trial court, which affirmed the director's order. Gerhardt appeals now as of right. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

Gerhardt is a 44-year old man with a diagnosis of respiratory failure caused by the progression of Duchenne Muscular Dystrophy. It is undisputed that he had a prolonged hospitalization from July 2019 until December 2019 due to respiratory failure, that he was discharged to a long-term acute care hospital, and then discharged home in December 2019. He has a tracheostomy, a PEG feeding tube, and a ventilator to aid breathing between the hours of 11:00 p.m. and 11:00 a.m. Additionally, he relies upon room ventilation to aid his breathing,

-1-

occasionally requires inline (through vent tubing) suction and nebulizer treatments. Gerhardt receives nutrition, hydration, and medication via his PEG tube, but also has oral feedings. Gerhardt has a power wheelchair, a Hoyer lift for transfers, and a condom catheter. Finally, he requires total care to bathe and dress, and he must be turned every two hours while in bed.

Gerhardt receives 16 hours per day of skilled nursing care in his home. He lives alone, and his parents have previously provided him with his continuing care. However, Gerhardt's parents are elderly, his father requires dialysis three times a week, and his mother is the primary caregiver for his father.

Gerhardt requested 24-hour skilled nursing care coverage from Blue Cross Blue Shield; however, the request was denied. Gerhardt appealed that decision to the director, requesting an external review of the coverage dispute under PRIRA. The director, as indicated above, assigned the matter to an IRO. The IRO reviewer, a physician who is board-certified in physical medicine and rehabilitation and who had been in active practice for 18 years, concluded:

> Medical necessity is not present for the patient to receive 24-hour, home skilled nursing services for his health condition.
>
> -- The available medical records indicate that since the end of December 2019 the patient has been in stable conditions. In 2020-2021, the patient did not have a significant deterioration in his health condition requiring an ambulance visit or unscheduled hospitalization. Per the multiple nursing notes, the patient is alert, orientated in person, place, and time, [and] has stable vital signs. The medical records do not contain evidence of aspiration pneumonia, urinary tract infections, or skill infections, or other infection processes.
>
> -- Since the end of December 2019, there was no additional nursing care tasks such as administration of intravenous and intramuscular injections, complex wound care, or other procedures that can be defined as a new, complex medical care.
>
> -- In December 2019, the patient underwent tracheostomy and feeding tube placement (PEG). The established tracheostomy tube requires care, which is usually delivered by trained caregivers, who do not have to be health professionals and does not require 24-hour skilled nursing services on a daily basis. The established PEG tube feedings and daily tube care can be performed either by a properly instructed patient or trained caregivers and do not require 24-hour skilled nursing services. The routine care of the ventilator machine, non-complex wound care, administration of medications via feeding tube, and assisting with daily living activities do not require the skills of a licensed nurse. The custodial care services also do not require the skills of a licensed nurse.
>
> -- The patient's care does not meet certain criteria for the 24 hours of continuous care for private duty nursing as it is defined in the Blue Cross Blue Shield of Michigan Medical Policy manual.

In particular, the following criteria are not met:

-- "Ventilator management record initial settings of mode of ventilation, tidal volume, respiratory rate, and wave form modifications, if any, (PEEP), and FI20 at the beginning of the shift. Oxygen saturation must be measured continuously for ventilator patients and any changes from baseline recorded thereafter. Hourly observations of the patient's clinical condition related to the ventilator management must be documented along with any changes in oxygen saturation."

   * Per the available medical records, there is no documentation provided about measurement of the mode of ventilation, tidal volume, respiratory rate, and wave form modifications, if any, (PEEP), and FI02.

-- "Management of tube drainage, complex wounds, cavities, irrigations require documentation of services on the record when they occur."

   * The patient does not have complex wounds or cavities, and his tube management does not require skills [sic] medical care.

-- "Complex medication administration (excluding PO medications that would ordinarily be taken by self administration) of drugs with potential for serious side effects or drug interactions require documentation and appropriate monitoring. This includes intravenous administration of drugs or nutrition."

   * The patient doesn't require intravenous administration of drugs or nutrition.

-- "Tube feedings that require frequent changes in formulation or administration rate or have conditions that increase the aspiration risk requires documentation."

   * The patient does not require frequent changes in formulation of administration rate of the tube feeding.

Additionally, the IRO reviewer noted that under the *Community Blue Group Benefits Certificate*, covered services include part-time health aid services—which includes preparing meals, laundering, bathing, and feeding—if the patient (1) is receiving skilled nursing care, physical therapy, or speech and language pathology services; (2) the patient's family cannot provide the services and there is an identified need for the services; (3) the services are provided by a home health aide and supervised by a registered nurse. The IRO reviewer concluded that, based on that criterion,

[t]he patient does not require the skilled nursing care and does not receive and does not require physical therapy, occupational therapy, or speech and language pathology services.

The services such as management of an established tracheostomy and feeding tube, routine care of ventilator machine, non-complex wound care, administration of medications via feeding tube, and assisting with daily living activities do not require

the skills of a licensed nurse. All of the above services should be done by properly instructed caregivers . . . .

The patient is in need [of] help with custodial or nonskilled care services such as cleaning bathroom/bedroom/kitchen, emptying of the urine collection bag and bedpan, sweeping, washing dishes, doing laundry, changing bed linens, as well as custodial care including bathing, dressing, wiping after defecation, and cleaning after changing a condom catheter. The medical records indicated that the patient's parents are currently involved in his care and will be overseeing his care.

According to the *Community Blue Group Benefits Certificate* . . . custodial or nonskilled care services are not covered. Uncovered services include "general housekeeping services, transportation to and from a hospital or other facility, private duty nursing, elastic stockings, sheepskin or comfort items (lotion, mouthwash, body powder, etc.), durable medical equipment, physician services (when billed by the home health care agency), custodial or nonskilled care services, services performed by a nonparticipating home health care provider.

Overall, the IRO reviewer recommended that the director uphold the denial of coverage.

The director noted that the IRO's recommendation was based on extensive experience, expertise, and professional judgment, and that it was "not contrary to any provision" of Gerhardt's certificate of coverage. Moreover, the director indicated that she could discern "no reason" to reject the recommendation, so she found that "the requested nursing care is not medically necessary" and was "not a covered benefit" under Gerhardt's benefit plan. Accordingly, the director upheld Blue Cross Blue Shield's decision to deny coverage.

Gerhardt then petitioned the circuit court for judicial review. He asserted that the director's decision was not based on competent, material, and substantial evidence on the whole record, and that the decision was arbitrary and capricious. He argued that the director, in particular, failed to give sufficient weight to the letters of medical necessity provided by his physicians. In support, he provided letters from three of his treating physicians, each of whom addressed the need for 24-hour nursing care. First, Dr. Cory O'Brien, a pulmonary and critical care consultant, indicated that Gerhardt was a patient of his since early 2020. He opined that 24-hour skilled nursing care was required, explaining:

[Gerhardt] has a diagnosis of muscular dystrophy with severe neuromuscular weakness as a result. This has been a progressive disorder that eventually led to chronic respiratory failure. He has been hospitalized for respiratory failure and subsequently underwent tracheostomy for continued need of mechanical ventilation. He is currenting receiving mechanical ventilation 18 out of 24 hours per day. His neuromuscular weakness is significant, to the point that if he were in any respiratory distress or had any problems on the ventilator, he would be unable to get his hands up to take care of this problem. As a result, he requires 24-hour nursing care due to his complex neuromuscular and respiratory compromise. It is my understanding that insurance currently feels that he only requires 16 hours of nursing care and this is completely unacceptable. He cannot have eight hours of

-4-

the day where there is not somebody there tending to his respiratory failure. Should he develop a mucus plug or some sort of mechanical problem with the ventilator, this could lead to death.

Second, Dr. Edward Rosick, Gerhardt's family physician, stated that Gerhardt required 24-hour nursing care in his home for the following reasons:

* The patient continues to use the ventilator as needed during the day, and the ventilator is required at night during sleep. He has needed, almost daily, to be placed on the ventilator without notice at any time during the day, requiring a nurse to continuously observe for signs of respiratory distress, including O2 monitoring, and then placing on the vent as needed.

* Frequent suctioning of tracheostomy is required, along with proper trach care and cleaning to prevent infection.

* He requires total care assist with transfers (using Hoyer lift), bed mobility and repositioning in bed and wheelchair to decrease skin breakdown.

* He requires total assist with feedings via PEG Tube, care of feeding tube and maintaining PEG Tube patency.

* He requires total assist with ADLs, including bathing, dressing, grooming, toileting, and condom catheter placement in the am and off in pm.

* He requires daily wound care to wound of lower abdomen that was acquired in the hospital during 07-12-19 hospitalization.

* He requires a daily nursing assessment, which includes a bowel assessment due to history and risk for bowel obstructions.

* He requires close monitoring for infection due to high risk for pneumonia and UTI.

He continues to remain at high risk for respiratory infection and failure, high risk for bowel obstruction, and high risk for re-hospitalization due to underlying conditions, Nursing 24/7 in the home has and will continue to decrease the risk of re-hospitalization.

Lastly, Gerhardt submitted a letter from Dr. Rani Gebara, an internal medicine doctor, who, after detailing Gerhardt's medical conditions, noted that if Gerhardt received 24/7 nursing care, "the occurrences of hospitalization and readmission should be minimal."[1]

---

[1] Gerhardt also asserted in the trial court that Optimal Medical Staffing has continued to provide him with 24-hour skilled nursing care "due to the obvious necessity for 24-hour care". However, he has provided no documentation in support of that assertion.

Following review of Gerhardt's petition, the trial court affirmed the director's decision to uphold Blue Cross Blue Shield's determination that 24-hour nursing care was not required. This appeal follows.

## II. REVIEW OF DECISION MADE UNDER PRIRA

### A. STANDARD OF REVIEW

Gerhardt argues that the trial court erred by upholding the director's decision. Gerhardt suggests that this Court's review is limited to determining if the circuit court misapprehended or grossly misapplies its review of the agency's facts. In support, he directs this Court to *Boyd v Civil Srv Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). However, because PRIRA does not provide for a hearing, the director's decision is reviewed to determine whether her decision is "authorized by law." *Ross v Blue Care Network of Mich*, 480 Mich 153, 164; 747 NW2d 828 (2008); see also Const 1963, art 6, § 28. A decision is not authorized by law if it "is in violation of statute [or constitution], in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious." *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 455; 688 NW2d 523 (2004) (quotation marks and citation omitted). Gerhardt contends that the decision was arbitrary and capricious. "A decision is 'arbitrary' if it is without adequate determining principle, fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, decisive but unreasoned." *Id*. at 472 (quotation marks, alterations, and citation omitted). "A decision is 'capricious' if it is apt to change suddenly; freakish; whimsical; humorsome." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

Gerhardt contends that the director's decision was arbitrary and capricious because, under the Blue Cross Blue Shield medical policy manual, his tracheostomy and ventilator dependency are verbatim examples of conditions for which a patient would require private duty nursing, because the director did not appropriately weigh the letters from his treating physicians, and because the IRO reviewer's recommendation was not evidence. We disagree.

Gerhardt directs this Court to the August 1, 2022 version of Blue Cross Blue Shield's medical policy manual. As pointed out by respondent on appeal, the version quoted by Gerhardt is not the version that was in effect when Blue Cross Blue Shield made its determination that Gerhardt was not eligible for 24-hour skilled nursing care and when the director upheld that determination. One key difference between the two versions is that there are no listed examples of care that would require private duty nursing in the version in effect at the time the director reviewed Gerhardt's appeal. Gerhardt's reliance on the language in the 2022 version, therefore, is misplaced.

Moreover, even if this Court were to consider the 2022 language, it does not show that the director's decision to uphold the denial was arbitrary and capricious. The 2022 medical policy provides the following list of examples of conditions for which a patient would require private duty nursing:

* Chronically ill patients who require greater than 8 hours of continuous skilled nursing care to remain at home

* New ventilator dependent patients

* New tracheostomy patients

* Patients dependent on other device-based respiratory support, including tracheostomy care, suctioning, and oxygen support.

Gerhardt correctly points out that, in light of his medical issues, he requires the type of care for which private duty nursing is required. Yet, the record reflects that he is, in fact, receiving 16-hours of private duty nursing. And the quoted sections of the medical policy only provide that private duty nursing is needed in such situations, not that such care is needed 24 hours per day. Instead, the version of the policy cited by Gerhardt on appeal and the version in effect when the director made her decision detail specific criteria that must be met by the insurance plan member in order to qualify for private duty nursing.

Gerhardt relies upon the letters submitted by three of his treating physicians as support for his contention that 24-hour skilled nursing care is required. His physicians, however, do not go through the medical criteria set forth in the medical policy manual in effect at the time the director made her decision. Moreover, the director was not required to weigh their recommendations— which did not consider the relevant medical criteria required for coverage—more favorably than the recommendation of the IRO reviewer who considered Gerhardt's medical records and compared it to the relevant medical coverage criteria.

Next, Gerhardt argues that the IRO reviewer's recommendation was not evidence. See *English*, 263 Mich App at 464 ("[T]he IRO's recommendation does not constitute evidence."). As a result, he contends that the only evidence in this case is the recommendation for 24-hour care from his treating physicians. His argument misconstrues the statutory framework. As explained in *English*:

> [The PRIRA] details the evidence the IRO must consider in completing the external review, MCL 550.1911(13), and requires the IRO to provide reasons for its recommendation, including references to the evidence it considered in reaching its recommendation. MCL 550.1911(14)(e), (g). [*English*, 263 Mich App at 466.]

The IRO recommendation, which was considered and referenced by the director in this case, indicated that the reviewer had considered an extensive list of Gerhardt's medical records, and the reviewer referred to that evidence when making the recommendation to uphold the denial of 24-hour nursing care. Thus, although the IRO reviewer's recommendation was not, strictly speaking, evidence, the recommendation relied upon evidence. And, in turn, the director considered that evidence when making her decision. As recognized in *English*, the IRO is used to assist the director "in reaching a decision." *Id*. at 464. Thus, consideration of the IRO did not render the director's decision arbitrary and capricious. Finally, we note that, as required by the PRIRA, the director specifically evaluated the IRO's recommendation to ensure that it complied with the health plan's terms of coverage. See MCL 550.1911(17).

Given the record in this case, there is no basis upon which to determine that the director's decision to uphold the denial of 24-hour skilled nursing care was arbitrary and capricious.

Affirmed.

/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle