*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. L. HARRIS, Minor.

UNPUBLISHED
January 25, 2024

No. 366679
Wayne Circuit Court
Family Division
LC No. 2013-514880-NA

Before: CAVANAGH, P.J., and RICK and PATEL, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to her son, DLH, under MCL 712A.19(b)(3)(g) (failure to provide proper care and custody), (i) (parental rights to siblings terminated because of serious and chronic neglect or physical or sexual abuse), and (j) (reasonable likelihood the child will be harmed if returned to the parent). We affirm.

## I. FACTUAL BACKGROUND

Mother gave birth to DLH in January 2022. During her hospitalization, staff became concerned about mother's behavior and some of the statements she was making. Specifically, mother indicated that her other children were not in her care and that she was "responding to internal stimuli." A Children's Protective Services (CPS) worker spoke with a clinical social worker at the hospital, who indicated that mother appeared to be suffering from delusions. Mother confirmed that she had been diagnosed with schizoaffective disorder, but disputed having the disorder. She further stated that she believed "people were out to get her." Mother also indicated that she was not taking the medication she had been prescribed to help manage her schizoaffective symptoms. A review of mother's CPS record at the time revealed that another child, FAH, had been temporarily removed from her care. Mother had been ordered to complete a case service plan in relation to FAH, but had failed to fully comply with its requirements. A petition for termination of mother's parental rights to FAH was pending in Oakland County when she gave birth to DLH.

Petitioner, the Department of Health and Human Services, filed a petition for termination of mother's parental rights in March 2022. The petition alleged that mother failed to benefit from prior mental health services as part of her ongoing case service plan for FAH, and that termination of her parental rights to FAH was already pending. The petition noted that mother's untreated mental health diagnoses created a risk of harm to DLH, and that she had not sought prenatal care

-1-

while pregnant with him. Additionally, the petition stated that mother was living with her brother, who also suffered from untreated mental health issues and had a criminal record. At the time the petition was filed, her brother had been arrested and charged with two assaultive felonies. The petition indicated that mother could not afford to take over her brother's rent obligation for their shared home and would soon become homeless. The trial court authorized the petition and found that it was contrary to DLH's welfare to remain in mother's care. DLH was placed in the care of relatives.

When the termination hearing took place, mother's parental rights to FAH were already terminated because of her failure to comply with her case service plan. She was homeless, having been unable to pay the rent to keep her brother's house, and was living in a homeless shelter. In all, mother had limited resources to provide for DLH. The trial court found that along with housing instability, mother's untreated mental health issues adversely affected her ability to parent DLH, as well as her ability to provide him with permanency and stability. During the hearing, a foster care worker assigned to DLH testified that mother's behavior during parenting time was mixed. She would attempt to show him positive attention, while also speaking out loud as though to someone who was not actually in the room. Mother was verbally aggressive while speaking out loud during parenting time, although it does not appear that this aggression was directed toward DLH. Regardless, mother's consistent habit of responding to voices or people who did not appear to exist suggested that she was still failing to follow a consistent medication schedule to help manage her schizoaffective symptoms. Accordingly, the trial court found that grounds for termination were established under MCL 712A.19b(3)(g), (i), and (j).[1] The trial court also found termination of respondent's parental rights was in the minor child's best interests, noting that mother had not established a bond with DLH during parenting time visits. This appeal followed.

## II. ANALYSIS

Mother argues that the trial court clearly erred by finding termination of her parental rights was in the minor child's best interests.[2] We disagree.

We review "for clear error the trial court's determination regarding the child[]'s best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding . . . is clearly

---

[1] Petitioner concedes on appeal that termination under MCL 712A.19b(3)(g) (failure to provide proper care and custody) was improper. Regardless, because termination was also based on statutory grounds (i) and (j), any error was harmless. See *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013) (confirming only one statutory ground need be established for termination of parental rights).

[2] To the extent that mother's argument addresses issues concerning reasonable efforts toward reunification and challenges to the statutory grounds for termination, these issues are waived because mother failed to include them in the statement of questions presented, and otherwise failed to adequately brief either claim. See *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004) ("An issue not contained in the statement of questions presented is waived on appeal."); MCR 7.212(C)(5) (requiring parties to an appeal to state their arguments in their statement of questions involved).

erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (quotation marks and citation omitted; alterations in original). "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*. (quotation marks and citation omitted).

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. "The focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). When determining whether termination is in a child's best interest, the trial court should consider a wide number of factors, which may include the following:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*Id*. at 346-347 (citation omitted).]

Further, the trial court should consider the child's safety and well-being, and any risk of harm the child may suffer if returned to the parent. *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). Where, as here, a child has been placed with a relative, such arrangements are an "explicit factor to consider in determining whether termination was in the children's best interests[.]" *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). "Placement with a relative weighs against termination," but even so, a trial court may nevertheless "terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re VanDalen*, 293 Mich App 120 at 147 (quotation marks and citation omitted).

Mother argues that the termination of her parental rights was not in DLH's best interests because she was not given a fair opportunity to develop and maintain a bond with him. Mother contends that DLH's best interests would be better served by allowing her to do so, but that petitioner did not provide her an opportunity to prove that she could properly parent DLH before seeking to terminate her parental rights.

Mother is essentially asking for more time to establish a bond with DLH to prove that termination was not in his best interests. But we cannot turn back the clock, and on the record before us, we conclude that the trial court did not err. The evidence presented at the termination hearing indicated that mother had not established a bond with DLH. The trial court noted that during parenting time visits, DLH cried inconsolably when mother held him, and that she was unable to calm him. DLH did not cry when his caregiver held him. The trial court also expressed concern with mother's inability to commit to a case service plan in relation to FAH. It also determined that her mental health issues remained severe. The court opined that mother's continued failure to take medication designed to help manage her schizoaffective symptoms would

negatively impact her ability to parent DLH and provide him with stability and permanency. DLH was still an infant and would be reliant on mother to fulfill all his needs. According to the trial court, mother's inability to care for her own needs demonstrated that she would be unable to properly care for a child as young as DLH.

Considering the above, the relevant factors weighed in favor of the court's conclusion that termination was in DLH's best interests, and that doing so would be the best way to provide DLH with the stability, finality, and permanence he both needs and deserves. The record indicated that DLH was thriving in his placement with relatives, and his caregiver expressed interest in moving forward with adopting him. The trial court explicitly considered DLH's placement with a relative in making its best-interest determination, and properly weighed all of the other relevant factors. See *In re Atchley*, 341 Mich App at 347-356. In sum, the trial court did not clearly err by finding that termination of respondent's parental rights was in DLH's best interests, despite his relative placement.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michelle M. Rick
/s/ Sima G. Patel