# STATE OF MICHIGAN

# COURT OF APPEALS

---

In re RAYMOND L. FRICK TRUST.

---

EDWARD M. KRESS and JENNY FRICK
TRYCHEL, also known as JENI FRICK
TRYCHEL, Successor Co-Trustees,

     Plaintiffs-Appellees,

v

BRADLEY SPICE and BCL 75, INC.,

     Defendants-Appellants.

UNPUBLISHED
December 11, 2018

No. 341498
Monroe Circuit Court
LC No. LC No. 16-138516-CK

---

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

     Plaintiff Raymond Frick[1] and defendant Bradley Spice were joint owners of defendant BCL 75, Inc. Plaintiff brought this action challenging the management of the business, naming both Spice and the corporation as defendants.[2] During the deposition of a nonparty, plaintiff and defendant reached a settlement agreement, which they placed on the record at the deposition. The agreement required defendant to purchase plaintiff's interest in BCL 75 for $760,284.03 and required defendant to use his "best efforts" to obtain financing to purchase plaintiff's interest. When defendant withdrew his application for financing, plaintiff moved to enforce the settlement agreement. Following an evidentiary hearing, the trial court found that defendant breached the "best efforts" requirement, it granted plaintiff's motion to enforce the settlement agreement, and it entered a judgment awarding plaintiff $760,284.03. Defendant appeals as of right. We affirm.

---

[1] Raymond Frick died during the present appeal and the trustees of his estate were substituted as parties. For ease of reference, we will use the term "plaintiff" in this opinion to refer to him.

[2] In this opinion we will refer to defendant Spice as "defendant," and we will refer to defendant corporation as "BCL 75."

# I. MEETING OF THE MINDS

The terms of the settlement agreement, as placed on the record at the deposition, required defendant to purchase plaintiff's interest in BCL 75. The agreement provided that it was "contingent upon [defendant] using his best efforts to obtain financing." In his first argument on appeal, defendant argues that the trial court erred by enforcing the settlement agreement because a valid contract never arose, given that there was no meeting of the minds regarding the meaning of "best efforts," or more specifically, what efforts were necessary to satisfy that requirement. We disagree.

"An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 571; 525 NW2d 489 (1994). "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

If there was a valid agreement to settle this lawsuit, defendant was bound by that agreement, absent a showing of mistake, fraud, duress, or unconscionable advantage. See *Plamondon v Plamondon*, 230 Mich App 54, 56; 583 NW2d 245 (1998); *Massachusetts Indemnity & Life Ins Co v Thomas*, 206 Mich App 265, 268; 520 NW2d 708 (1994). Defendant does not argue that the agreement was invalid for any of the foregoing reasons, but contends that a valid agreement never arose in the first instance. To form a valid contract, there must be mutual assent or a meeting of the minds on all essential terms. *Kloian*, 273 Mich App at 453. "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. at 454 (citations and quotation marks omitted).

The evidence clearly establishes that the parties agreed to settle their pending lawsuit. The agreement was contingent upon defendant using his best efforts to obtain financing. Defendant claims that he withdrew his application for financing because he became aware that, for financing, he would have been required to pledge his personal assets as collateral for any business loan. Although defendant correctly observes that the agreement did not expressly provide that he would be required to pledge his personal assets to obtain financing in order to satisfy the "best efforts" requirement, that does not mean there was no meeting of the minds with respect to the "best efforts" obligation under the agreement. Even though the parties' agreement did not explicitly include a definition or description of "best efforts," that open term has frequently been used in contracts to describe a party's performance obligation, and the lack of a specific definition does not render it ambiguous or prevent the creation of a valid contract because of a lack of a meeting of the minds. The use of open terms of performance, such as "best efforts," is discussed in *8621 Ltd Partnership v LDG, Inc*, 169 Md App 214, 229; 900 A2d 259 (2006), in which the court observed that parties "are free to enter into mutually binding promises that define their future business relationship by selecting a variety of 'non-specific contractual standards' for measuring each party's performance of its contractual obligation. The court explained that " 'open term' performance contracts are premised upon a mutually enforceable agreement that the non-specific standard selected by the parties will be interpreted and applied by a fact-finder 'after the fact,' based on all the circumstances surrounding the parties' course of dealing." *Id*. at 229-230 (citations omitted). When the term "best efforts" is

not defined, the standard is generally what is reasonable under the circumstances. See, e.g., *Baron v Natanzon*, 509 F Supp 2d 501, 514 (D Md, 2007). We find this non-Michigan caselaw persuasive. See *People v Cameron*, 319 Mich App 215, 227; 900 NW2d 658 (2017).

Use of the open term "best efforts" in the parties' agreement in this case did not prevent an agreement from being formed due to a lack of a meeting of the minds. Rather, the open term obligated defendant to do what was reasonable to obtain the contemplated financing. If defendant was concerned about placing any limitations on the performance necessary to satisfy this obligation, such as a limitation specifically recognizing that he would not be required to pledge personal assets to obtain financing, he should have included that limitation in the agreement. Instead, the parties deliberately left the term open, which they were free to do.

## II. BEST EFFORTS

Next, defendant challenges the trial court's determination that he did not use his best efforts to obtain financing. Whether defendant used his best efforts to obtain financing is a question of fact, to be decided by the trier of fact. See *Baron*, 509 F Supp 2d at 515 ("a 'best efforts' assessment is generally a matter of fact and not law"). The trial court decided this issue after conducting an evidentiary hearing. We review the trial court's findings of fact for clear error, which occurs when the appellate court is left with a definite and firm conviction that a mistake has been made. *Douglas v Allstate Ins Co*, 492 Mich 241, 256-257; 821 NW2d 472 (2012).

The trial court found that defendant did not use his "best efforts" to obtain financing because the evidence showed that defendant applied for a business loan to finance the contemplated transaction, but then contacted the financial institution and withdrew his request for financing before the bank decided whether to approve or deny the loan. Accordingly, the court found that defendant abandoned any good-faith effort to obtain financing, thereby breaching the parties' agreement.

The parties cite *Davidson & Jones Dev Co v Elmore Dev Co, Inc*, 921 F2d 1343, 1352 (CA 6, 1991), in which the court explained that "[w]hen performance of a condition precedent depends upon a financing agreement, an inference of lack of diligence or good faith in the performance of conditions precedent arises when no attempt is made by the contracting party to seek an agreement that satisfies the condition." We conclude that this rule from *Davidson* is inapposite because the trial court in the present case did not find that defendant failed to satisfy the "best efforts" obligation due to a complete failure to act. Defendant made an attempt to obtain financing, but then withdrew his application. As such, the question is not whether defendant failed to make any attempt to obtain financing, but whether the withdrawal of his loan application breached his "best efforts" performance obligation.

In *Baron*, 509 F Supp 2d at 514, the court stated that "[u]ndertaking one's 'best efforts' to achieve a contractual goal has been described in terms of reasonableness." The standard falls short of a standard required for a fiduciary, and it does not require a party to ignore his own interests and make "every conceivable effort" to perform. *Id*. For instance, one need not incur extraordinary expense to satisfy a "best efforts" clause. *Id*. Because the reasonableness of a person's actions is highly dependent on the surrounding circumstances, "a 'best efforts'

assessment will similarly be heavily dependent on the particular facts and circumstances of the case in question." *Id*. at 515. As explained in *Baron*, "[g]iven that a 'best efforts' assessment is generally a matter of fact and not law, the finder of fact will be in the 'best position' to determine the sufficiency of a promisor's efforts." *Id*. (citations omitted).

Defendant argues that he did not fail to satisfy the "best efforts" requirement because any loan would have required him to pledge his personal assets, and it was not reasonable to expect him to pledge his personal assets to finance a business loan. Had defendant not withdrawn the loan application, he may have had stronger footing to make this argument. Because a party is not required to disregard his own interests to satisfy a "best efforts" requirement, a trier of fact could have found that it would have been reasonable for defendant to decline a loan if he had been required to pledge substantial personal assets to obtain the loan. However, defendant withdrew the loan application before it could be processed. Although it was contemplated that it would be necessary to pledge some personal assets to obtain a loan, the extent of any personal pledge was never determined because defendant withdrew the application before it was submitted to the bank committee charged with responsibility for approving or denying the loan. As such, the facts never showed that defendant was, ultimately, required by the bank to put up substantial personal assets. The only personal asset defendant mentioned at the hearing was a lot he owned on Laskey Road that the bank employees had asked about, and it was not even clear from the testimony if that property was in the business's name or defendant's own name. Defendant admitted that the loan process was not far enough along that he was required to put up any personal assets.

The trial court, as the trier of fact, could have reasonably determined that some use of personal assets as collateral would have been reasonable, particularly considering that defendant was named as an individual party to the lawsuit and that he did not raise the issue of pledging personal assets before he agreed to the terms of the settlement. Given that defendant withdrew the loan application before the loan committee even made a decision, and thus was without knowledge of the extent to which he might be required to pledge personal assets, the trial court did not clearly err by finding that defendant failed to use his best efforts to obtain financing.

Defendant, citing *Baron*, appears to be arguing that specific performance of the settlement agreement should not have been ordered by the trial court even if "best efforts" were not employed by defendant. First, we note that defendant did not raise, in his statement of questions presented for appeal, the issue of the *remedy* ordered by the trial court.[3] Accordingly, he has not properly presented the issue for appeal. See *English v Blue Cross Blue Shield of Michigan*, 263 Mich App 449, 459; 688 NW2d 523 (2004). At any rate, defendant has not provided a sufficient basis for relief. In *Baron*, like the case at bar, a "best efforts" clause in a settlement agreement was challenged as too vague. *Id*. at 507, 509. The court analyzed whether the clause was enforceable, even though it was not defined. *Id*. at 509. The court concluded that

---

[3] The question as framed by defendant involves whether the court erred in its finding of no "best efforts."

such clauses are enforceable, but, in the context of discussing a Maryland Court of Appeals decision in *Brehm v Sperry*, 92 Md 378; 48 A 368 (1901), stated:

> Not only did the Court of Appeals find defendants' defense of laches to be meritorious, *id*. at 373, but it also wrote the following about the "best efforts" provision:
>
>> The contract in question is not, in its entirety, such a one as the appellant could have had specific performance of upon an application for that form of relief. It is not a mere contract of sale on one side, and a purchase on the other, certain and definite in its terms. It is not a contract to do any certain and definite thing at all events by either party to it. On the part of [defendants], it is simply a contract "to give their best efforts" to bring about the consummation of a scheme outlined therein. If they used their best efforts to put the scheme into operation, it is all they could be called upon to do; and a failure to succeed in carrying out the contract, or any particular stipulation in it, would have given the appellant no cause of action against them of any kind. On the other hand, he was under no obligation to do any of the things agreed to on his part, unless they succeed in their efforts. Obviously, therefore, the contract was not of a nature to be specifically enforced in its entirety against the other parties to it on the application of the appellant.
>
> *Id*. at 372. While the Court of Appeals questionably observed that contractual "best efforts" clauses lack the clarity of arguably more straightforward contracts for the sale of goods, the undersigned does not interpret this passage as standing for the proposition that such provisions are so vague as to defeat enforcement. Carefully read, *Brehm* stands for two principles, neither inconsistent with the enforceability of the "best efforts" provision here. First, specific performance may not be awarded for the breach of a "best efforts" agreement. Second, if a promisor agrees to and in fact does put forth his best efforts to achieve some contractual goal, he cannot be held liable for failing to reach that goal. This comports with more modern cases that have concluded that a promise to engage one's "best efforts" "does not mean that a party must be successful in performance. If the performing party does the best he can, the other party has received the benefit of the bargain." Accordingly, *Brehm* provides little guidance on the question of the enforceability of the "best efforts" provision in this suit for damages. [*Baron*, 509 F Supp 2d at 510-511 (some citations omitted).]

We do not believe that this discussion is applicable in this case. While it is true that the *Baron* court stated that "specific performance may not be awarded for the breach of a 'best efforts' agreement," *id*. at 510, the trial court in the present case did *not order specific performance of the "best efforts" clause*, but awarded plaintiff money damages in an amount consistent with the parties' settlement agreement and as requested by plaintiff in his motion to enforce the settlement agreement. Defendant has simply not made any showing that the trial

court erred by awarding plaintiff a judgment in that amount and in fact does not make any argument regarding other possible amounts.[4]

### III. MCR 2.507(G)

Defendant also argues that the trial court erred by enforcing the parties' settlement agreement because the agreement was not binding under MCR 2.507(G). Defendant did not challenge the agreement on this basis in the trial court. Therefore, this issue is unpreserved and we review it for plain error affecting defendant's substantial rights. *Bennett v Russell*, 322 Mich App 638, 642-643; 913 NW2d 364 (2018).

An agreement to settle a pending lawsuit must satisfy MCR 2.507(G), regardless of whether it also satisfies basic contract principles. *Mich Mut Ins Co v Indiana Ins Co*, 247 Mich App 480, 483-485; 637 NW2d 232 (2001); *Metro Life Ins Co v Goolsby*, 165 Mich App 126, 128-129; 418 NW2d 700 (1987). MCR 2.507(G) provides:

> An agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney.

As explained in *Mich Mut Ins*, 247 Mich App at 484:

> MCR 2.507(H) [now, with some modifications, MCR 2.507(G)] has been characterized as
>
> > "essentially a court rule version of a statute of frauds governing legal proceedings." 3 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), p 125. As noted by the commentators: "Legal proceedings are of sufficient importance to require that written proofs be furnished in support of a claim by one party that the other party has entered into certain agreements, made certain concessions, etc. with respect to those proceedings." *Id*. Thus, just as an oral agreement for the sale of real property, for example, is unenforceable under MCL 566.108 . . . even though that agreement may meet the technical requirements of a contract, an oral settlement agreement in a lawsuit is also unenforceable under MCR 2.507(H) unless it is reduced to a signed writing or made in

---

[4] Nor does defendant adequately demonstrate that the trial court erred by ordering him, as part of the remedy for breach of the settlement agreement, to take steps to remove plaintiff from the bank note on the property. Contrary to the implication raised by defendant's arguments, the trial court did not enter an order demanding that defendant specifically perform under the contract (i.e., demanding that defendant expend "best efforts"); instead, the court ordered a remedy for breach of the settlement agreement.

open court. *Brunet v Decorative Engineering, Inc*, 215 Mich App 430, 435-436, 546 NW2d 641 (1996). [Brackets omitted.]

In this case, the agreement was reached at a deposition, not in open court. Therefore, for the agreement to be enforceable, it is necessary that evidence of the agreement be in writing and subscribed by defendant, the party against whom the agreement is offered, or by defendant's attorney. MCR 2.507(G). The court rule uses the term "subscribed," and not the term "signed." This Court discussed this distinction in *Kloian*, 273 Mich App at 459-460, stating:

"Subscribed" is not defined in MCR 2.507(H). "Subscribe" means "to append, as one's signature, *at the bottom of a document* or the like; sign." *Random House Webster's College Dictionary* (2001) (emphasis added). The Uniform Electronic Transactions Act provides: "If a law requires a signature, an electronic signature satisfies the law." MCL 450.837(4). An "electronic signature" is "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." MCL 450.832(h). However, MCR 2.507(H) does not require a "signature"; it requires a "writing, *subscribed*" by the party against whom enforcement is sought. MCR 2.507(H) (emphasis added). "Subscribed" is a different word from "signed." Since some statutes of frauds require an agreement "in writing and signed," MCL 566.108 and 566.132, and others require a "writing, subscribed," MCR 2.507(H) and MCL 566.106, we must treat "in writing and signed" differently from a "writing, subscribed."

The original settlement agreement, embodied in the March 18, 2005, e-mail messages, satisfies the subscription requirement of MCR 2.507(H). The March 18, 2005, e-mail containing the terms of the settlement offer was subscribed by plaintiff's attorney because he typed, or appended, his name at the end of the e-mail message. Likewise, the March 18, 2005, e-mail from defendant's attorney containing the acceptance of the offer was subscribed because it, too, contained defendant's attorney's name at the end of the e-mail message.

The modification of the settlement agreement, however, did not satisfy the requirement because there was no "evidence of the agreement . . . in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." MCR 2.507(H). The March 21, 2005, e-mail from plaintiff's attorney, requesting a mutual release, has plaintiff's attorney's name *at the top*, in the heading of the e-mail. Subscription requires a signature *at the bottom*. See *Random House Webster's College Dictionary* (2001).

Therefore, the original settlement agreement, and not the modified settlement agreement, complies with MCR 2.507(H). The trial court correctly enforced the original settlement agreement because the modified settlement agreement is unenforceable under MCR 2.507(H). We hold that if a modification of a settlement agreement is technically unenforceable under MCR 2.507(H), the original settlement agreement remains enforceable.

The deposition transcript prepared in this case is a writing that contains the parties' names. The transcript also shows that both parties confirmed on the record that they were in agreement with the settlement that was placed on the record at the deposition. Specifically, the transcript reads, at the end:

> MR. GOLDSMITH [defense counsel]: Mr. Spice, you've heard the proposed settlement or the settlement placed on the record.
>
> Do you agree with the terms as stated?
>
> MR. SPICE: Yes.

Defense counsel, at a later hearing, stipulated to the accuracy of the transcript.

A reasonable argument can be made that defendant "appended" his name, see *Kloian*, 273 Mich App 459, to the settlement agreement, and this agreement was indeed reduced to writing. In other words, "evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered[.]" MCR 2.507(G). We acknowledge that in *Brunet*, 215 Mich App at 436, the Court concluded that a settlement agreement placed on the record at a deposition did not satisfy the court rule. However, the *Brunet* Court was focusing on a "signed writing," see *id*. ("an oral settlement agreement . . . is unenforceable . . . unless it is reduced to a signed writing"), whereas the proper inquiry, as noted, is whether a "subscribing" occurred, and this Court has indicated that the definition of "subscribe" includes "append," *Kloian*, 273 Mich App at 459. Again, a reasonable argument can be made that defendant appended his name to the agreement by openly agreeing, in front of the notary public who was recording the deposition proceedings, to the terms of the settlement.

We acknowledge that this issue presents a close question, but relief under the plain-error rule requires not only a *clear or obvious* error but also, in the civil context, requires that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). These requirements have not been met in the present case, and therefore appellate relief is unwarranted.

Affirmed.


/s/ Patrick M. Meter
/s/ Colleen A. O'Brien

-8-