*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
July 18, 2024

*In re* HORN/CAVER, Minors.

No. 369501
Saginaw Circuit Court
Family Division
LC No. 21-050042-NA

Before: RIORDAN, P.J., and RICK and N. P. HOOD, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating her parental rights to her minor children, EH and AC, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), and (j) (reasonable likelihood of harm if returned to parent).[1] The trial court did not clearly err when it found a statutory basis warranting termination of respondent's parental rights. Nor did it clearly err when it found that terminating respondent's parental rights served the children's best interests. We therefore affirm.

## I. BACKGROUND

---

[1] Respondent arguably waived her argument regarding the statutory bases supporting termination of her parental rights and abandoned her argument regarding the children's best interests by: (1) failing to address the statutory bases for termination in her statement of the issues presented, and (2) failing to advance a separate, substantive argument regarding the children's best interests. See *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004) ("An issue not contained in the statement of questions presented is waived on appeal."). See also *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position."). To the extent that respondent waived or abandoned these issues, we exercise our discretion to address them. Cf. *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (stating that this Court may overlook preservation requirements if consideration is necessary for the proper determination of the case).

This case arises from the termination of respondent's parental rights to her children, EH and AC. In November 2021, petitioner, the Department of Health and Human Services (DHHS), sought to remove the children from respondent's care. DHHS filed a permanent custody petition alleging that respondent's boyfriend sexually abused the children, and respondent allowed her boyfriend to have continued contact with the children despite her knowledge of the abuse. DHHS also alleged that respondent struggled with substance abuse and lacked the resources to provide the children with adequate food. Before authorizing the petition, the trial court entered an ex parte order for protective custody. Through the order, the court removed the children from respondent's care and placed them in foster care with their maternal aunt.

In January 2022, respondent entered a plea, admitting to the allegations in the petition. In light of respondent's plea, the trial court exercised jurisdiction over the children and adopted a case service plan for respondent. The case service plan required that respondent undergo random drug screens, maintain a legal source of income, maintain adequate housing, and participate in substance abuse treatment, mental health services, and parenting classes.

Throughout the proceedings, respondent made sporadic progress in multiple inpatient substance abuse treatment programs but struggled to comply with other conditions or benefit from other services. The trial court suspended respondent's parenting time following the recommendation of the children's therapist, who believed that parenting time could retraumatize the children. Although respondent completed parenting classes, she was unable to maintain suitable employment and housing.

In October 2023, DHHS petitioned the trial court to terminate respondent's parental rights under MCL 712A.19b(3)(c),[2] (g), and (j). A referee presided over the ensuing termination hearing. During the hearing, a foster care caseworker testified that respondent failed to make consistent progress in her service plan, and there were remaining barriers to reunification, including respondent's sporadic substance use, poor parenting skills, unresolved mental health conditions, and lack of suitable employment and housing. The children's therapist testified that the children's maternal aunt provided a safe and stable environment for them, and reunification with respondent could retraumatize them. In contrast, respondent's drug treatment case manager testified that respondent performed well in her inpatient treatment program, engaged in community service, and had negative drug screens since August 2023. She also testified that respondent's inpatient treatment program allowed children to reside with their parents, provided daycare, and provided transportation to and from the local school.

Following the presentation of evidence, the referee found that DHHS established statutory bases to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). The referee also found that termination served the children's best interests despite acknowledging that

---

[2] MCL 712A.19b(3)(c) contains two subparts. Yet, petitioner failed to identify the specific subpart or subparts underlying its allegations regarding MCL 712A.19b(3)(c). Respondent does not argue that these circumstances led to clear error in the trial court's findings. Even if respondent raised this argument, its resolution would not impact the outcome of this appeal because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

the children's relative placement weighed against termination. In December 2023, the trial court adopted the referee's findings and entered an order terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). This appeal followed.

## II. STANDARDS OF REVIEW

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). We review for clear error the trial court's decision that statutory grounds for termination have been proven by clear and convincing evidence, as well as its determination that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41, quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989) (cleaned up). This Court gives deference to "the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016), quoting *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred by finding a statutory basis warranting termination of her parental rights to EH and AC. We disagree.

To terminate parental rights, the trial court must find that at least one basis for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). Termination is warranted under MCL 712A.19b(3)(j)[3] if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." MCL 712A.19b(3)(j). "The harm contemplated under MCL 712A.19b(3)(j) includes emotional harm as well as physical harm." *In re Sanborn*, 337 Mich App at 279, citing *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). Moreover, "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

On the date of the termination hearing, respondent was engaged in inpatient substance abuse treatment and had not tested positive for drugs for several months. Despite her progress over the course of approximately three months, respondent had previously been discharged from multiple substance abuse programs for noncompliance and had regularly tested positive for tetrahydrocannabinol (THC), cocaine, and other associated metabolites.[4] Respondent also failed to perform mandated drug screens such that many of them were deemed positive. The assigned

---

[3] MCL 712A.19b(3)(j) was amended, effective February 13, 2024, to replace "he or she" with "the child." See 2023 PA 295. We have quoted the current version of the statute.

[4] Respondent also tested positive for methamphetamine in the spring of 2022.

foster care caseworker characterized respondent's substance abuse treatment as a "roller coaster" of progress and setbacks. In short, respondent struggled with substance abuse throughout much of the proceedings.

Respondent was also unable to rectify her lack of suitable housing and employment. During the proceedings, respondent was removed from several homeless shelters and exhausted the housing resources that DHHS made available to her. Although respondent's inpatient substance abuse treatment program provided stable housing, respondent could not remain in inpatient substance abuse treatment indefinitely, and the assigned foster care caseworker opined that it was not an appropriate setting for reunification. Regarding employment, respondent held multiple jobs throughout the proceedings but failed to maintain them. Respondent's short-term job prospects were also limited by conditions of her inpatient substance abuse treatment program, which prohibited respondent from obtaining employment during the first nine months of treatment.

There was also evidence that respondent's parenting skills posed a barrier to reunification. Respondent completed parenting classes and addressed parenting skills during therapy. Yet, the assigned foster care caseworker opined that respondent had not accepted responsibility for allowing her boyfriend to have continued contact with the children despite her knowledge of his sexual abuse. Respondent's therapist also testified that respondent's past relationship choices indicated that reunification could pose a risk of harm for the children. Respondent also suffered from mental health conditions that she had not yet fully addressed.

Finally, and most critically, there was evidence that reunification also posed a risk of further emotional harm to the children. Throughout the proceedings, the children resided with their maternal aunt as part of a relative foster care placement. The assigned foster care caseworker testified that the children's maternal aunt provided love, safety, and stability for the children and shared a bond with them. The children reported to the assigned foster care caseworker that they did not wish to return to respondent's care. Specifically, EH reported that he was afraid of respondent, and AC reported that he did not wish to see respondent. The children's therapist also testified that the past sexual abuse traumatized the children, and reunification with respondent had the potential to retraumatize them.

In sum, the record supports the trial court's conclusion that there was a reasonable likelihood that, based on respondent's conduct or capacity, that the children would be harmed if returned to her care. Namely, respondent failed to make meaningful progress in rectifying the conditions that led to adjudication, reunification required removing the children from a stable environment, and reunification posed the risk of exacerbating the children's past emotional harm. The trial court did not clearly err when it found a statutory basis warranting termination of respondent's parental rights under MCL 712A.19b(3)(j).[5]

## IV. BEST INTERESTS

---

[5] Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights. *In re Ellis*, 294 Mich App at 32. We, therefore, need not address respondent's arguments regarding MCL 712A.19b(3)(c)(*i*) and (*ii*).

Respondent argues that the trial court clearly erred when it found that terminating respondent's parental rights served the children's best interests. We disagree.

"If the court determines that one or more statutory grounds for termination exist and that termination is in the child's best interests, the court must enter an order terminating the respondent's parental rights and order that additional efforts for reunification not be made." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should "focus on the child rather than the parent" when determining whether termination is in the best interests of a child. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). In making a best-interests determination, the trial court may consider factors such as:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

"[T]he fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests." *Olive/Metts Minors*, 297 Mich App at 43 (quotation marks and citation omitted). Although a child's placement with a relative weighs against termination, a trial court may nonetheless terminate a respondent's parental rights if it finds that termination serves the child's best interests. See *id*.

Here, the record reflects that respondent did not share a strong bond with the children. The children reported to the assigned foster care caseworker that they did not wish to return to respondent's care. The children's therapist also testified that the children's emotional trauma could have been partially attributed to their lack of bonding with respondent. As previously addressed in greater detail, the record also reflects that respondent failed to substantially comply with her case service plan, had yet to demonstrate sustained sobriety, lacked strong parenting skills, lacked the resources to provide for the children, and was unable to provide a stable environment for the children within a reasonable time period.

In contrast, the record reflects that the children shared a bond with their maternal aunt, with whom they resided in relative foster care throughout the proceedings. The assigned foster care caseworker and the children's therapist both testified that the children's maternal aunt provided a safe and stable environment for the children. The referee explicitly stated that the children's relative placement weighed against termination and recognized that the children's maternal aunt wished to adopt the children in lieu of a guardianship arrangement. There was also evidence that reunification also posed a risk of further emotional harm to the children. Specifically, EH reported that he was afraid of respondent, and AC reported that he did not wish to see respondent. The children's therapist also testified that the past sexual abuse traumatized the children, and reunification with respondent had the potential to retraumatize them.

In sum, the record supports the referee's findings and conclusions, which the trial court adopted. These findings properly accounted for the children's relative placement and the applicable best-interests factors. The trial court therefore did not clearly err when it found that terminating respondent's parental rights served the children's best interests.

## V. CONCLUSION

The trial court did not clearly err when it found a statutory basis warranting termination of respondent's parental rights. Nor did it clearly err when it found that terminating respondent's parental rights served the children's best interests. We therefore affirm.

/s/ Michael J. Riordan
/s/ Michelle M. Rick
/s/ Noah P. Hood