*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Z. KELLER, Minor.

UNPUBLISHED
October 16, 2025
10:18 AM

No. 373036
Hillsdale Circuit Court
Family Division
LC No. 23-000101-NA

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court order terminating her parental rights to the minor child, ZK, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide care or custody although able to do so), and (j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. FACTUAL BACKGROUND

ZK was born on February 25, 2023. When ZK was born, mother tested positive for amphetamines and THC.[2] ZK subsequently tested positive for methamphetamine and THC. Mother had no prenatal care before ZK's birth and stated that she purposely avoided obtaining prenatal care because she feared CPS would take newborn ZK away from her. Mother had no supplies or plans in place for postnatal care. On February 27, 2023, petitioner, the Department of Health and Human Services (DHHS), petitioned for the removal of ZK from mother's custody. The trial court entered an ex parte order taking ZK into protective custody.

---

[1] The order also terminated the parental rights of respondent-father to ZK, but he has not appealed the order.

[2] "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013), citing *Stedman's Medical Dictionary* (26th ed), p 1791.

Following an adjudication, the trial court assumed jurisdiction over ZK. Mother agreed to comply with a parent-agency treatment plan (PATP). As part of the PATP, mother agreed to submit to random drug screens; maintain contact with a foster care worker; undergo a psychological examination and a substance abuse examination; abide by recommendations resulting from those examinations; attend and benefit from parenting classes; and maintain and provide verification of appropriate housing, legal employment, and transportation.

Subsequent hearings documented continued positive drug screens for mother, lack of engagement with services, and unstable housing. Mother missed numerous parenting-time visits, refused drug screens, and failed to comply with the PATP. In November 2023, the trial court suspended mother's supervised parenting time with ZK because she continued to decline to submit to drug screens. Additionally, mother had been behaving erratically during parenting time visits. She appeared to be under the influence of methamphetamine and had frequent, loud arguments with father in front of ZK.

Once ZK had been in foster care for nearly a year, DHHS filed a supplemental petition for termination of mother's parental rights. In October 2024, following a hearing on the supplemental petition, the trial court terminated mother's parental rights. This appeal followed.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Mother argues that the trial court erred by finding that statutory grounds existed to support terminating her parental rights to ZK. We disagree.

This Court reviews "for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). Clear error occurs "if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (quotation marks and citation omitted).

The trial court terminated mother's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). Termination is proper under MCL 712A.19b(3)(c)(*i*) if:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . .

> (i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

-2-

ZK was initially removed from mother's custody because ZK and mother tested positive for illegal drugs. Mother admitted that she avoided prenatal care for fear that CPS would take ZK away when she was born. Mother admittedly had no postnatal care plan, nor did she obtain any of the supplies needed to care for a newborn. Evidence presented at the adjudication also showed that mother had a long history of methamphetamine use and that she lost custody of ZK's three elder siblings because of her possession and use of methamphetamine.

At the termination hearing, mother admitted that ZK had been exposed to drugs because mother used methamphetamine during her pregnancy. Evidence also showed that mother did not engage in any substance-abuse treatment and she missed the vast majority of drug tests offered during the case. The few drug tests that mother did take showed that she continued to use methamphetamine. In late August 2024, mother began substance abuse treatment services through Pines Behavioral Health. Even so, the record indicates that mother gave birth again in September 2024, just over two weeks before the October 2024 termination hearing. The newborn had methamphetamine in her system at birth, indicating that mother still had not successfully overcome her substance abuse issues.

Mother's substance use was a significant concern that remained an issue throughout the proceedings below. Even so, mother only attempted to address her substance use issues immediately before the termination hearing, when it became apparent that she was in imminent danger of losing her parental rights. Given mother's lengthy history of noncompliance, these last-minute efforts were insufficient to demonstrate any meaningful change to the conditions leading to the adjudication. Further, mother has presented no evidence showing that she benefited from the substance abuse treatment she participated in, or that she completed and benefited from any other services geared toward reunification with ZK.

Mother's failure to maintain safe and suitable housing was also a concern throughout the proceedings below. At the adjudication, evidence showed that mother was evicted shortly before ZK was born. Evidence at the termination hearing also showed that mother moved twice before ultimately moving into a camper that lacked running water, heat, and electricity. ZK's foster care worker testified that when she visited mother at the camper, the windows of the camper were boarded up and there was so much refuse littering the ground that the foster-care worker had trouble reaching the camper's front door. The foster-care worker concluded that the camper was not a fit home for ZK. Mother admitted at the termination hearing that her housing situation was unstable, and asserted that she planned to move yet again shortly after the hearing.

ZK was 19 months old at the time of the termination hearing. At that point, mother had not seen ZK in nearly a year because of her continued methamphetamine abuse and her failure to participate in services. Considering, ZK's age, it was unlikely that mother would rectify her

housing and substance-abuse issues within a reasonable time. Thus, the trial court did not err by finding that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*).[3]

## B. BEST INTERESTS[4]

Mother also argues that the trial court erred by finding that termination of her parental rights was in ZK's bests interests. We disagree.

This Court reviews a trial court's best-interests determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (citation omitted).

"If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child." *In re Mota*, 334 Mich App at 320. The court focuses on the child, rather than the parent, when reviewing best interests. *In re Atchley*, 341 Mich App at 346. In making its determination,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Mother had not seen ZK for nearly a year by the time the termination hearing was held. ZK was about eight months old when the trial court suspended mother's supervised parenting time.

---

[3] Only one statutory ground for termination needs to be established, *In re Atchley*, 341 Mich App at 346 n 6, so we need not address mother's arguments that the trial court clearly erred by also finding statutory grounds for termination under MCL 712A.19b(3)(g) and (j).

[4] Mother arguably waived this argument by failing to include it in her statement of the issues presented. See *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004) ("An issue not contained in the statement of questions presented is waived on appeal."). However, we exercise our discretion to address the issue. See *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (stating that this Court may overlook preservation requirements if the "failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented").

Over the next 11 months, ZK grew socially and emotionally to understand that she could look to her foster parents, and then her preadoptive parents,[5] to meet her needs. The foster care worker testified that, by the time of the termination hearing, she did not believe that mother and ZK had any remaining bond, but that ZK was developing a very strong bond with her preadoptive parents. Mother's history of substance use, lack of engagement with services, and inability to provide safe and stable housing also weighed heavily against reunification. The trial court considered the foregoing and observed that ZK needed permanence and stability that mother could not provide, particularly considering ZK's young age and the time that she had been in foster care. On the record before us, the trial court did not clearly err by ruling that termination was in ZK's best interests. See *In re Atchley*, 341 Mich App at 346.

## C. INITIAL REMOVAL

Mother next argues that the removal of ZK the day after her birth violated her procedural and substantive due process rights, and constituted a "de facto termination of parental rights." We disagree.

Mother concedes on appeal that this issue is not preserved for appellate review because it was not raised in the trial court. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). We review unpreserved constitutional claims for plain error affecting substantial rights. *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021) (quotation marks and citation omitted).

"Parents possess a fundamental interest in the companionship, custody, care, and management of their children, an element of liberty protected by the due process provisions in the federal and state Constitutions." *In re Bell*, 341 Mich App 596, 606-607; 991 NW2d 251 (2022) (quotation marks and citation omitted). But this right "is not absolute, as the state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor and in some circumstances neglectful parents may be separated from their children." *In re Sanders*, 495 Mich 394, 409-410; 852 NW2d 524 (2014) (quotation marks and citation omitted). A parent's right to due process persists even after the parent has lost temporary custody of the child. *In re Williams*, 333 Mich App 172, 179; 958 NW2d 629 (2020) (quotation marks and citation omitted).

Mother argues that ZK's emergency removal immediately after birth was unnecessary because there was no evidence that ZK would be harmed if she remained in mother's care. The trial court may order placement of a child in foster care if the court finds all of the following:

---

[5] The record reflects that ZK's foster parents would not adopt ZK because of violence and threats of violence made during parenting time visits. DHHS found a preadoptive family for ZK but had to keep their information anonymous for the family's safety.

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare. [MCL 712A.13a(9); see also MCR 3.965(C)(2).]

ZK was removed from mother's custody because she tested positive for methamphetamine and THC at birth. Mother likewise tested positive for amphetamines and THC when ZK was born. Mother admitted she had received no prenatal care. She had no supplies to care for a newborn and had no plan for postnatal care. CPS had prior contact with mother and knew that her parental rights to three of her other children had been terminated due to issues with substance use. Thus, grounds existed under MCL 712A.13a(9) to warrant ZK's emergency removal from mother's custody.

Mother also suggests that her procedural due-process rights were violated because she was not provided with notice and an opportunity to be heard regarding the removal. See *In re Yarbrough*, 483 Mich at 92 (stating that parents have a due-process right to notice and an opportunity to be heard in child protective proceedings). The record reflects that mother appeared at the hearing the day after ZK was removed and had an opportunity to be heard regarding the need for removal. At the hearing, mother acknowledged that she understood why the DHHS took ZK into protective custody and that she needed to make personal changes to reunify with ZK. Mother was thus not deprived of her due-process right to participate in the proceedings. *Id*.

Mother also argues that the trial court failed to make adequate reasonable-efforts findings under MCR 3.965(C)(4), which requires that "the court must determine whether reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required." She explains that no reasonable efforts could have been made in the single day that ZK was alive before the removal. In the ex parte order authorizing ZK's removal from mother's custody, the court asserted that reasonable efforts had been made to prevent the removal. The court stated that, as part of those reasonable efforts, mother had been involved in prior CPS investigations and had been offered foster care case management, safety planning, family team meetings, and Families First programming. Ample evidence thus supported that mother had a history of substance abuse, which had led to the removal of three of her other children, despite the provision of resources designed to prevent removal. Despite that, mother continued to use drugs, resulting in ZK testing positive for methamphetamine and THC at birth. "[I]n making the reasonable efforts determination under this subrule, the child's health and safety must be of

-6-

paramount concern to the court." MCR 3.965(C)(4). The record supports that the court made findings under MCR 3.965(C)(4) and that no services short of removal could have safeguarded ZK under the circumstances, regardless of the brevity of her life prior to removal.

Mother contends that the emergency removal constituted a "de facto termination" of her parental rights because it prevented her from bonding with ZK. The record belies this contention. Mother's bond to ZK was not severed by the removal. Mother bonded with ZK during parenting time sessions offered directly following the removal, and DHHS provided mother with additional services designed to help her bond and reunify with ZK. Ultimately, mother elected to miss parenting time visits with ZK. Mother also failed to engage in substance abuse treatment, despite knowing that her substance abuse placed ZK at serious risk of bodily harm. Mother offers no alternative to removal that would have ensured ZK's safety in this case, nor has she established that the removal constituted a "de facto termination of parental rights." For the foregoing reasons, mother cannot show that the emergency removal constituted plain error.[6]

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin

---

[6] Mother also argues that the emergency removal constituted an unlawful seizure under the Fourth Amendment. Mother fails to explain or substantiate that claim, except to state that she was not given an opportunity to be heard regarding the removal and that there was no finding of imminent danger to ZK. It is unclear how either amounts to a Fourth Amendment violation. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position." *In re TK*, 306 Mich App at 712 (quotation marks and citation omitted; alterations in original). The argument is thus abandoned.

-7-