*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DECORA CONSTRUCTION, INC.,

        Plaintiff/Counterdefendant-
        Appellee/Cross-Appellant,

v

SAA MANAGEMENT, LLC,

        Defendant/Counterplaintiff-
        Appellant/Cross-Appellee,

and

AHMAD AHMAD,

        Defendant.

UNPUBLISHED
November 18, 2025
3:10 PM

No. 368571
Wayne Circuit Court
LC No. 20-002615-CB

Before: GARRETT, P.J., and PATEL and YATES, JJ.

PER CURIAM.

Defendant/counterplaintiff SAA Management, LLC (SAA) contracted with plaintiff/counterdefendant Decora Construction, Inc. (Decora) to renovate a commercial office building. Decora filed this action after SAA failed to make payments as required under the contract, and SAA filed a countercomplaint alleging that Decora performed untimely and "shoddy" work. The parties[1] filed cross-motions for summary disposition. Relevant to these appeals, the trial court granted SAA's motion with respect to Decora's breach-of-contract claim on the basis that Decora breached the contract by failing to provide SAA 30 days' written notice before it filed suit. The court also granted Decora's motion for partial summary disposition regarding SAA's breach-of-contract claim, determining that SAA breached the contract first. Thereafter, the court granted Decora's motion to file an amended complaint that realleged breach of contract against

---

[1] Because defendant Dr. Ahmad Ahmad was not a party to the contract, and the trial court dismissed Decora's claims against Dr. Ahmad, references to "the parties" refer to SAA and Decora only.

SAA and denied SAA's second motion for summary disposition. The case proceeded to trial on the issue of Decora's damages only, and the jury returned a verdict in the amount of $160,598.52. Thereafter, the court granted Decora's motion for case-evaluation sanctions.

SAA appeals by right the trial court's judgment in Decora's favor in the amount of $175,605.08. SAA challenges the court's orders granting Decora's motion to file an amended complaint, denying SAA's second motion for summary disposition, and granting Decora's motion for case-evaluation sanctions. Decora cross-appeals by right the court's July 14, 2022 order granting SAA's motion for summary disposition with respect to Decora's breach-of-contract claim. We agree with Decora that the court erred by determining that Decora was required to provide SAA 30 days' written notice before it filed suit. The court therefore erroneously granted in part SAA's motion for summary disposition and dismissed Decora's breach-of-contract claim. Given this determination, we need not address SAA's arguments challenging the court's orders granting Decora's motion to file an amended complaint and denying SAA's second motion for summary disposition. In addition, we conclude that the trial court erred by awarding Decora case-evaluation sanctions. Accordingly, we reverse in part the July 14, 2022 order, reverse the order granting Decora's motion for case-evaluation sanctions, and remand for entry of an amended judgment.

## I. FACTS AND PROCEEDINGS

Defendant Dr. Ahmad Ahmad is SAA's president. SAA owned a commercial building in Detroit that Dr. Ahmad wanted to remodel to house his medical office on the first floor and his wife's dental office on the second floor. SAA contracted with Decora to provide the materials and labor for the remodel. The contract required SAA to pay Decora $285,000 with a 20% deposit and stated that Decora would invoice SAA for additional payments "according to work completed and projected." (Original in all caps.) The contract also stated that Decora would begin working on the project after the contract was signed, the plans were approved, and the necessary permits were obtained. It was estimated the project would take approximately three months. Regarding the possibility of a default, the contract provided:

> **6. REMEDIES.** In addition to any and all other rights a party may have available according to law, if a party default [sic] by failing to substantially perform any provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due), the other party may terminate the Contract by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default.
>
> The party receiving such notice shall have 30 days from the effective date of such notice to cure the default(s). Unless waived by a party providing notice, the failure to cure the default(s) within such time period shall result in the automatic termination of this Contract.

On June 25, 2019, Dr. Ahmad signed the contract on behalf of SAA, and Hassan Beydoun signed the contract on behalf of Decora.[2]

After the parties signed the contract, they submitted documents to the city of Detroit for approval, obtained the necessary permits, and Decora began working on the project. At some point thereafter, Beydoun requested payment from Dr. Ahmad, who repeatedly told Beydoun that payment was forthcoming, but nearly three months passed and no payment was made. Meanwhile, Decora continued working on the project until it was almost completed. Decora stopped working on the project on December 20, 2019, because Dr. Ahmad failed to pay anything after September 2019. Beydoun and Dr. Ahmad exchanged text messages and e-mails, and met in person to resolve the issue, but it was never resolved. Beydoun sent Dr. Ahmad a final statement dated December 26, 2019, indicating a balance of $152,663.41.

On January 13, 2020, Decora filed a claim of lien against the property. On February 19, 2020, Decora filed a complaint against SAA and Dr. Ahmad, alleging breach of contract, unjust enrichment, and foreclosure of the construction lien. SAA filed a countercomplaint against Decora, alleging slander of title, breach of contract, breach of fiduciary duty, and negligence. SAA also sought to quiet title to the property and discharge the construction lien. Substantively, SAA asserted that Decora failed to perform the work in a timely manner and that the work performed was "shoddy." Thereafter, the trial court granted SAA's motion to file an amended countercomplaint, and SAA filed a first amended countercomplaint alleging slander of title, breach of contract, and seeking discharge of the construction lien. SAA did not reallege its breach-of-fiduciary-duty and negligence claims.

The parties filed cross-motions for summary disposition under MCR 2.116(C)(10). SAA argued that it paid Decora $125,000, and Beydoun ignored Dr. Ahmad's requests for information regarding how the amounts paid had been applied. SAA also argued that Decora failed to comply with § 6 of the contract because Decora failed to provide SAA 30 days' written notice before filing its complaint. SAA asserted that Decora filed its complaint on the same day Beydoun sent a text message stating he would file a lawsuit if SAA did not pay. In addition, SAA maintained that Decora filed suit against Dr. Ahmad in his individual capacity notwithstanding that he signed the contract as an officer of SAA. Finally, SAA argued that Decora breached the contract by performing shoddy work and failing to start the project on time.

Decora sought partial summary disposition with respect to SAA's breach-of-contract claim. It argued that the first party to breach a contract cannot maintain a breach-of-contract claim, and SAA breached the contract first by failing to pay the amounts due under the contract. Decora also asserted that it provided SAA with more than 30 days' notice regarding the amounts due, but SAA failed to cure the default and refused to make any further payments unless Beydoun told Dr. Ahmad how SAA's previous payments had been spent. Decora argued that the contract, however, did not require Beydoun to provide such information, and SAA's obligation to pay was not conditioned on Beydoun providing the information. In addition, Decora disputed SAA's claim

---

[2] Although the contract was signed on June 25, 2019, it indicates an effective date of May 23, 2019.

that Decora's work was untimely and shoddy and maintained that the contract was between Decora and "SAA MANAGEMENT LLC/DR AHMAD AHMAD," indicating that Dr. Ahmad was a party to the contract.

The trial court granted in part and denied in part SAA's motion, and granted Decora's motion. The court first determined that Dr. Ahmad signed the contract in his capacity as SAA's agent and not in his individual capacity. The court therefore dismissed Dr. Ahmad from the case, leaving only Decora and SAA as parties. The court next determined that Decora breached the contract by failing to comply with the notice provision in § 6 of the contract. The court stated:

> In considering this issue, the Court first notes that Section 6 authorizes a party to "terminate the Contract by providing written notice to the defaulting party." This suggests that the "written notice" required by Section 6 must include not only a description of the default, but also a declaration of the party's intent to terminate the agreement if the default is not cured. This is significant because neither of the communications cited by Decora include such a reference. Rather, they simply inform SAA/Ahmed [sic] that a payment is currently due.

> The Court does not believe that such communications constitute "written notice" required by Section 6 and, therefore, Decora failed to comply with Section 6. As a result, Decora may not maintain a claim for breach of contract based on SAA's failure to make the payments, and summary disposition of Decora's breach of contract claim is appropriate.

Next, the trial court determined that although Decora breached the parties' contract by failing to comply with § 6, Decora's breach did not preclude it from defending against "SAA's breach of contract claim by pleading and proving that SAA failed to make the required payments, thereby breaching the parties' agreement first." The court opined that "it is undisputed that SAA, in fact, did not make the payments, thereby breaching the agreement." In addition, viewing the evidence in the light most favorable to Decora, the court rejected SAA's arguments that Decora's work was untimely or shoddy. The court also determined that the contract did not entitle Dr. Ahmad to an explanation of how his payments were applied. The court therefore granted Decora's motion and dismissed SAA's breach-of-contract claim. Finally, the court determined that Decora could not recover on its unjust-enrichment claim because the parties' relationship was governed by contract. The court therefore dismissed that claim. The court expressed no opinion regarding Decora's lien-foreclosure or SAA's slander-of-title claims because the parties failed to address those claims in their motions.

Thereafter, Decora moved to file an amended complaint to again allege breach of contract against SAA. Decora asserted that the trial court dismissed its breach-of-contract claim based on the court's determination that it failed to satisfy a condition precedent to filing suit. Decora maintained that, after the court's decision, it provided SAA with 30 days' written notice to cure its default, and SAA failed to do so.

SAA opposed the motion, arguing that Decora's notice was untimely and its proposed amended complaint merely restated the same allegations stated in its original complaint. SAA maintained that Decora stopped work on the project and filed this action without complying with

§ 6 of the contract and could not remedy its failure to provide notice by providing such notice after the fact. SAA asserted that because Decora filed this action without giving SAA an opportunity to cure the default, an amendment would be futile.

Following a hearing, the trial court granted Decora's motion. Regarding whether Decora's amended complaint would simply restate the same breach-of-contract claim previously dismissed, the court stated that it would "deal with it, and then sanctions are in play" if Decora refiled the same claim. Decora filed an amended complaint, realleging its breach-of-contract claim against SAA because of SAA's failure to pay on the contract. Decora also reasserted its claim seeking foreclosure of its construction lien.

SAA again moved for summary disposition under MCR 2.116(C)(10), arguing that Decora's breach-of-contract claim was the same claim the trial court previously dismissed. SAA also asserted that Decora's after-the-fact notice failed to timely provide it with notice of Decora's intent to file a lawsuit if the default was not cured and was therefore insufficient to satisfy the notice provision in § 6 of the contract. SAA contended that notice was a condition precedent to Decora's ability to recover under the contract. SAA also challenged the trial court's previous determination that it breached the contract by failing to pay. It asserted that it paid $132,336.59 before Decora terminated the agreement, but the court failed to acknowledge that SAA made additional payments after the initial down payment. In addition, SAA argued that the scope of the project and the amount owed had changed after the contract's inception, and Dr. Ahmad intended to pay the remaining balance, which was only $30,000, after Beydoun explained how the funds would be applied. Finally, SAA asserted that Decora's lien-foreclosure claim was dependent on its breach-of-contract claim, and both claims should be dismissed because the court previously determined that Decora could not recover under the contract since it breached § 6 of the contract.

In response to SAA's motion, Decora argued that the trial court determined in its July 14, 2022 order that it was "undisputed" that SAA breached the contract by failing to make payments. Decora asserted that it did not need to prove SAA's breach once again. Decora also argued that the court dismissed its previous breach-of-contract claim on procedural grounds as stated in the July 14, 2022 order, and Decora thereafter provided SAA with notice of the default, but SAA failed to pay. Decora further recounted that the court then granted its motion to file an amended complaint. Decora asserted it was entitled to summary disposition under MCR 2.116(I)(2) because the court already determined that SAA breached the contract by failing to pay. Finally, Decora maintained that its lien-foreclosure claim was not dependent on its breach-of-contract claim, but was instead a separate and distinct claim.

Before the trial court could rule on SAA's second motion for summary disposition, SAA filed a second amended countercomplaint, realleging its slander-of-title, quiet-title, breach-of-contract, and negligence claims. Decora moved for summary disposition with respect to SAA's claims under MCR 2.116(C)(8) and (10). Regarding SAA's quiet-title claim, Decora asserted that no evidence showed that Decora's construction lien was invalid, and regarding SAA's slander-of-title claim, Decora argued that the evidence failed to establish falsity or malice, both of which were required to establish the claim. In addition, Decora maintained that SAA could not prevail on its breach-of-contract claim because SAA breached the contract first, and SAA's negligence claim failed because Michigan law prohibits tort claims that are based solely on contract.

SAA responded to Decora's motion, asserting that it would prevail on its quiet-title claim because Decora's lien-foreclosure claim was dependent on Decora's breach-of-contract claim, which SAA argued the trial court should again dismiss since Decora failed to comply with the notice provision before filing suit. SAA reiterated its arguments that Decora was the first party to breach the contract by performing shoddy work, and the court's July 14, 2022 order failed to recognize that SAA made payments on the contract after SAA's initial down payment. SAA also maintained that Beydoun's text messages to Dr. Ahmad were sufficient to establish malice, the amount of the construction lien was more than the amount of the last payment Decora requested from SAA, and Decora should have released the construction lien after the court dismissed Decora's breach-of-contract claim. Further, SAA agreed to dismiss its negligence claim.

At some point thereafter, the case was reassigned from Judge David A. Groner to Judge Annette J. Berry. Following oral argument, Judge Berry dismissed SAA's negligence claim based on SAA's agreement to dismiss the claim. The court also determined that Decora's construction lien was valid and that the evidence did not establish that Beydoun acted with malice. The court therefore granted Decora's motion with respect to SAA's quiet-title and slander-of-title claims. The court next determined that Judge Groner had already dismissed SAA's breach-of-contract claim on the basis that SAA breached the contract first. The court stated that SAA should have moved for reconsideration or appealed that ruling if it wished to continue pursuing the claim and that SAA failed to follow the proper procedure by reasserting the claim in its second amended countercomplaint.

Regarding SAA's motion, the trial court stated that Judge Groner previously dismissed Decora's breach-of-contract claim on procedural grounds without prejudice to Decora curing the procedural defect. Judge Groner then granted Decora's motion to file an amended complaint adding the breach-of-contract claim back into the action after Decora cured the defect. Based on Judge Groner's previous rulings, the court denied SAA's motion. The court also recognized that Judge Groner previously determined that SAA breached the contract and was the first party to breach the contract. The court therefore granted summary disposition in Decora's favor under MCR 2.116(I)(2) and ruled that trial would proceed on the issue of damages only.

At trial, the jury awarded Decora damages in the amount of $160,598.52. Decora moved for case-evaluation sanctions under former MCR 2.403(O) and for costs and attorney fees under the Construction Lien Act (CLA), MCL 570.1101 *et seq*. Decora asserted that the case-evaluation panel awarded it $100,000 on its claims and awarded SAA $2,500 on SAA's counterclaims. Decora accepted the case-evaluation award while SAA rejected it. Decora argued that, when case evaluation occurred in 2020, MCR 2.403(O)(1) required the imposition of case-evaluation sanctions against the rejecting party unless the verdict was more favorable to the rejecting party than the case evaluation. Decora recognized that the Michigan Supreme Court amended MCR 2.403, effective January 1, 2022, and that the amended version of MCR 2.403 does not provide for case-evaluation sanctions. Decora asserted that the trial court should apply the rule in effect at the time of case evaluation.

SAA opposed Decora's motion, arguing, in relevant part, that Decora incurred most of its fees after it filed its amended complaint, which occurred after case evaluation. SAA reiterated its argument that Decora breached the contract by failing to provide notice before it filed suit and that,

had it provided such notice, SAA would have cured the default and the conflict would have been resolved.

Following a hearing, the trial court granted Decora's motion and awarded case-evaluation sanctions in the amount of $40,102.50 and sanctions under the CLA in the amount of $55,957.50. The court's order stated, "Notwithstanding the above, the total sum of $55,957.50 may be only collected by Plaintiff as Case Evaluation Michigan Construction Lien Act sanctions and that shall [sic] be no double recovery in sanctions."

SAA appealed to this Court, challenging the trial court's orders granting Decora's motion to file an amended complaint, denying SAA's second motion for summary disposition, and granting Decora's motion for case-evaluation sanctions. Decora filed a cross-appeal, challenging the court's order July 14, 2022 order granting in part SAA's motion for summary disposition and dismissing Decora's breach-of-contract claim.

## II. DISMISSAL OF DECORA'S BREACH-OF-CONTRACT CLAIM

We first address Decora's argument asserted in its cross-appeal challenging Judge Groner's dismissal of its breach-of-contract claim. We review de novo a trial court's decision on a motion for summary disposition. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). A motion under MCR 2.116(C)(10) tests the factual support of the plaintiff's complaint. *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506; 991 NW2d 230 (2022). In reviewing a motion under subrule (C)(10), this Court considers the pleadings, affidavits, depositions and other evidence in the light most favorable to the nonmoving party. *Hanlin v Saugatuck Twp*, 299 Mich App 233, 239; 829 NW2d 335 (2013). The opposing party may not rest upon mere allegations or denials in its pleadings, but instead must provide documentary evidence setting forth specific facts that establish a genuine issue for trial. *Anderson*, 341 Mich App at 506. Summary disposition is proper if the evidence fails to establish a genuine issue of material fact for trial, and the moving party is entitled to judgment as a matter of law. *Houston*, 335 Mich App at 557. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (citation omitted).

We also review de novo questions involving the interpretation of a contract. *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 474; 986 NW2d 427 (2022). "The goal of contract interpretation is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 393; 964 NW2d 846 (2020) (quotation marks and citation omitted). "This Court will enforce unambiguous contracts as written." *Zwiker*, 340 Mich App at 475. "It is not this Court's role to undermine the parties' freedom to contract by rewriting clear contractual language to comply with what the Court perceives as the parties' intent." *Id*. We accord the words used in a contract their plain and ordinary meanings and give effect to every word and phrase. *Bayberry Group*, 334 Mich App at 393. We must avoid an interpretation that renders any part of the contract surplusage or nugatory. *Id*. A contract is ambiguous if its provisions may be interpreted in a matter that irreconcilably conflicts. *Patel v FisherBroyles, LLP*, 344 Mich App 264, 272; 1 NW3d 308 (2022).

Decora argues that § 6 of the parties' contract did not require it to give SAA 30 days' notice before it filed its complaint against SAA. It asserts that providing 30 days' notice was not a

condition precedent that it was required to fulfill before it filed suit. "A condition precedent is a fact or event that the parties intend must take place before there is a right to performance under the contract." *Gueye v State Farm Mut Auto Ins Co*, 343 Mich App 473, 483 n 7; 997 NW2d 307 (2022) (quotation marks and citation omitted). "If the condition is not satisfied, there is no cause of action for a failure to perform the contract." *Harbor Park Mkt, Inc v Gronda*, 277 Mich App 126, 131; 743 NW2d 585 (2007). Courts are not inclined to interpret a contractual provision as a condition precedent unless the language of the contract compels such an interpretation. *Real Estate One v Heller*, 272 Mich App 174, 179; 724 NW2d 738 (2006). "Accordingly, unless the contract language itself makes clear that the parties intended a term to be a condition precedent, this Court will not read such a requirement into the contract." *Id*.

We agree with Decora that the plain language of the contract did not require it to provide SAA with 30 days' notice of SAA's default before it filed its complaint. The contract stated:

> *In addition to any and all other rights a party may have available according to law*, if a party default [sic] by failing to substantially perform any provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due), *the other party may terminate the Contract* by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default.
>
> The party receiving such notice shall have 30 days from the effective date of such notice to cure the default(s). . . . [Emphasis added.]

The plain language of § 6 required Decora to provide SAA 30 days' notice before it terminated the contract, but did not require it to do so if it sought another remedy. Termination of the contract was not the only remedy available, and the phrase "[i]n addition to any and all other rights a party may have available according to law" makes clear that the parties were free to pursue remedies other than termination. No contractual language conditioned Decora's ability to file suit against SAA on Decora providing SAA with 30 days' notice before it did so, and Judge Groner erred by rewriting the parties' contract to contain such a requirement. *Zwiker*, 340 Mich App at 475. Because a court cannot rewrite an unambiguous contract, we reverse in part the July 14, 2022 order to the extent that Judge Groner granted SAA's motion for summary disposition and dismissed Decora's breach-of-contract claim.

## III. DECORA'S AMENDED COMPLAINT AND SAA'S SECOND MOTION FOR SUMMARY DISPOSITION

SAA argues that Judge Groner erred by granting Decora's motion to file an amended complaint because he previously dismissed Decora's breach-of-contract claim on the merits with prejudice. SAA also contends that Judge Berry did not have authority to overrule Judge Groner's dismissal of Decora's breach-of-contract claim. SAA asserts that Judge Berry therefore erred by denying SAA's second motion for summary disposition. Given our conclusion in section II

reversing Judge Groner's dismissal of Decora's breach-of-contract claim, SAA's arguments are moot and we need not address them.[3]

## IV. CASE EVALUATION SANCTIONS

SAA also challenges the trial court's order awarding Decora case-evaluation sanctions. We generally review de novo the trial court's determination whether to award case-evaluation sanctions. *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009). But, we review for an abuse of discretion whether applying a new court rule would "work injustice" as stated in MCR 1.102. *Webster v Osguthorpe*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166627 & 166628); slip op at 11. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024).

SAA contends that the trial court erred by awarding case-evaluation sanctions on Decora's claims asserted in its amended complaint when Decora filed the amended complaint after case evaluation, and the claims asserted in the amended complaint were not before the case-evaluation panel. Case evaluation occurred in December 2020. At that time, MCR 2.403(O)(1) provided:

> If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

Our Supreme Court amended MCR 2.403, effective January 1, 2022, eliminating Subrule (O). *Webster*, ___ Mich at ___; slip op at 5; see also MCR 2.403, as amended by 508 Mich clxiii (2021).

MCR 1.102 provides as follows:

> These rules take effect on March 1, 1985. They govern all proceedings in actions brought on or after that date, and all further proceedings in actions then pending. A court may permit a pending action to proceed under the former rules if it finds that the application of these rules to that action would not be feasible or would work injustice.

"Although MCR 1.102 was originally a transitional provision for the introduction of the court rules, the same principle has been applied to subsequently adopted or amended rules." *Reitmeyer*

---

[3] SAA also argues in the body of its brief on appeal that Judge Groner should have dismissed Decora's lien-foreclosure claim at the same time that he dismissed Decora's breach-of-contract claim. By failing to state that issue in its statement of questions presented, however, SAA waived appellate review of that argument. "An issue not contained in the statement of questions presented is waived on appeal." *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004). In any event, as discussed in this opinion, Judge Groner erred by dismissing Decora's breach-of-contract claim.

*v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 337; 602 NW2d 596 (1999) (quotation marks and citation omitted). Therefore, a court generally applies a newly-adopted court rule unless a reason exists to apply the previous rule. *Id*. Applying a new court rule would "work injustice" as stated in MCR 1.102 "where a party acts, or fails to act, in reliance on the prior rules and the party's action or inaction has consequences under the new rules that were not present under the old rules." *Id*. (quotation marks and citations omitted).

SAA argues that "the injustice in this case is to allow Decora to be awarded case evaluation sanctions on the [amended complaint] that never went to case evaluation and which was filed after sanctions had been eliminated from the Michigan Court Rules." Because SAA failed to file the transcript of the hearing on Decora's motion for case-evaluation sanctions with this Court, the trial court's reasoning in support of its decision is unknown.[4] "The appellant must provide this Court with the lower court record, and this includes the filing of all transcripts in the lower court file." *Thompson v Thompson*, 261 Mich App 353, 359 n 1; 683 NW2d 250 (2004). The appellant waives its argument by failing to provide this Court with a complete record for review. *Reed v Reed*, 265 Mich App 131, 161; 693 NW2d 825 (2005). Therefore, SAA has arguably waived appellate view of its argument.

In any event, we conclude that the trial court abused its discretion by awarding case-evaluation sanctions. Although the trial court stated in its order that there "shall be no double recovery in sanctions," it awarded Decora case-evaluation sanctions as well as $55,957.50 in sanctions under the CLA. Because Decora was able to recover its costs and attorney fees under the CLA, applying the amended version of MCR 2.403 rather than the former version of the court rule would not have "work[ed] injustice" as stated in MCR 1.102. Therefore, the trial court abused its discretion by applying the old rule and awarding Decora case-evaluation sanctions.

## V. CONCLUSION

The trial court erred by granting in part SAA's motion for summary disposition and dismissing Decora's breach-of-contract claim. Because the court erred by dismissing the claim, we need not address SAA's challenges to the orders granting Decora's motion to file an amended complaint and denying SAA's second motion for summary disposition. Further, the trial court abused its discretion by applying the old case-evaluation-sanctions rule and awarding Decora case-evaluation sanctions. Accordingly, we remand to the trial court for the limited purpose of entering an amended judgment conforming to our opinion.

Affirmed in part, reversed in part, and remanded for entry of an amended judgment. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Kristina Robinson Garrett
/s/ Sima G. Patel
/s/ Christopher P. Yates

---

[4] The trial court's order indicated that Decora's motion was granted "for the reasons stated on the record."